[No. C043152. Third Dist. Apr. 8, 2005.]

THE PEOPLE, Plaintiff and Respondent, v.
FRANK ROMAS SUMAHIT, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts IB., II, and III.

### COUNSEL

Gary E. Gibbs, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Jo Graves, Assistant Attorney General, and Carlos A. Martinez, Deputy Attorney General, for Plaintiff and Respondent.

### OPINION

**MORRISON, J.**—In the published portion of this opinion we hold that a person who has been found to be a sexually violent predator (SVP) is precluded from challenging the sufficiency of the evidence that he *currently* lacks the ability to control his behavior, where he refuses to be interviewed by the state's experts with respect to the current status of the mental abnormality which forms the basis of his commitment. We also conclude that defendant's refusal to be treated forecloses him from claiming that application of the Sexually Violent Predator Act (SVPA or the Act; Welfare and Institutions Code, § 6600 et seq.)[1] violates the ex post facto clause of the federal or state Constitutions on the ground that it is primarily "punitive" in nature.

---

[1] All references to undesignated code sections are to the Welfare and Institutions Code.

In this, his third recommitment proceeding under the SVPA, Frank Romas Sumahit was again found to be an SVP. He appeals from an order committing him to the Department of Mental Health (DMH) for a period of two years.

On appeal, defendant claims that the evidence is insufficient to support the order of commitment and that application of the SVPA to the facts of this case violated his rights under the due process and ex post facto clauses of the state and federal Constitutions. We will affirm the order.

## BACKGROUND

Defendant is a 56-year-old man. His history of child molesting dates back to 1975, when four girls who were residents at a home for the mentally retarded accused him of rape. He admitted having sex with two of them, and pleaded guilty to annoying or molesting a child. In 1982, defendant hired a 12-year-old babysitter, locked her in a room, pushed her down on the couch and fondled her breasts and pubic area. The next year, he molested the eight-year-old daughter of his wife, an act which he admitted but attributed to alcohol. In 1985, defendant molested the five-year-old daughter of his common law wife. He was found guilty of two counts of lewd and lascivious conduct and sentenced to eight years in prison.

Defendant was paroled in 1990. Two months later he had sexual intercourse with the five-year-old daughter of his girlfriend, and forced her to orally copulate him. He was convicted of yet another count of lewd and lascivious conduct and sentenced to 11 years in prison.

Defendant has admitted molesting 10 to 12 female victims, all under the age of 10, and to having difficulty controlling his impulses with respect to little girls. On the other hand, he has tried to avoid responsibility for his crimes by minimizing the nature of the behavior or claiming his victims enjoyed having sex.

Defendant also has an alcohol abuse problem. His alcoholism is an adjunct to his sexual deviance. Although he sought therapy in 1990, defendant has refused treatment for either his alcoholism or his sexual deviance since arriving at Atascadero State Hospital in 1996.

Defendant stipulated that he had been convicted of two qualifying sexually violent offenses within the meaning of the SVPA. Jury trial was waived, and the case was tried by the court.

Dr. Jesus Padilla and Dr. Gabrielle Paladino testified for the People and gave similar opinions. Each opined that defendant suffered from the diagnosed mental disorder of pedophilia, nonexclusive, attracted to females, and from alcoholism which alters his judgment and fosters his sexual misconduct. Both doctors testified that defendant's disorder predisposes him to commit criminal sexual acts, and impairs his volitional capacity to control his behavior.

Defendant declined to be interviewed by either of the prosecution's experts.[2] Both doctors applied the "Static-99" test for predicting whether a person is likely to repeat his sexual offenses, and considered other factors as well. Defendant scored a "5" on the Static-99 test, indicating he was at medium to high risk of committing another criminal sexual offense. A "6" or above would be considered in the highest possible risk category for reoffending.

Both Drs. Padilla and Paladino concluded that defendant was likely to commit more sexually violent predatory acts if released. Dr. Paladino opined that, based on his history and unwillingness to accept treatment, defendant remained a danger to the community.

*Defense*

Dr. Theodore Donaldson testified as an expert for the defense. Dr. Donaldson found defendant did not have the requisite mental disorder to qualify as an SVP and "did not find convincing evidence" that defendant had difficulty controlling his behavior. Based on defendant's age and other factors, Dr. Donaldson placed the likelihood of defendant reoffending at about 10 percent.

After a two-day trial, the court found the allegations of the petition to have been sustained beyond a reasonable doubt and ordered defendant committed to DMH for two additional years. Defendant appeals.

## *APPEAL*

### *I*

### *Substantial Evidence*

Defendant contends the evidence presented at trial was insufficient to support a finding that he was an SVP within the statutory definition. His

---

[2] Defendant would not consent to be interviewed by Dr. Padilla unless the examination was recorded, a condition which was contrary to DMH policy. He flatly refused to be interviewed by Dr. Paladino. On the other hand, he granted defense psychologist Dr. Donaldson an hour-long interview.

argument has two prongs: (1) the state's evidence failed to show that he *currently* suffers from a diagnosed mental disorder that renders him unable to control his volition to commit sexually violent offenses; and (2) there was no evidence that he posed a threat to commit a sexually violent *predatory* offense within the meaning of the statute.

"The SVPA, enacted in 1996 (Stats. 1995, ch. 763, § 3) and thereafter amended, permits the involuntary civil commitment or recommitment, for two-year terms of confinement and treatment, of persons who are found . . . beyond a reasonable doubt (§ 6603, subd. (a)), to be 'sexually violent predator[s]' (§ 6604). The Act defines a sexually violent predator as one 'who has been convicted of a sexually violent offense against two or more victims and who has a diagnosed mental disorder that makes the person a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior.' (§ 6600, subd. (a)(1).) A ' "[d]iagnosed mental disorder" includes a congenital or acquired condition affecting the emotional or volitional capacity that predisposes the person to the commission of criminal sexual acts in a degree constituting the person a menace to the health and safety of others.' (*Id.*, subd. (c).)" (*People v. Williams* (2003) 31 Cal.4th 757, 764 [3 Cal.Rptr.3d 684, 74 P.3d 779].)

When a defendant challenges the sufficiency of the evidence to support a finding that he is an SVP, "this court must review the entire record in the light most favorable to the judgment to determine whether substantial evidence supports the determination below. [Citation.] To be substantial, the evidence must be ' "of ponderable legal significance . . . reasonable in nature, credible and of solid value." ' [Citation.]" (*People v. Mercer* (1999) 70 Cal.App.4th 463, 466 [82 Cal.Rptr.2d 723].) "In reviewing the record to determine the sufficiency of the evidence this court may not redetermine the credibility of witnesses, nor reweigh any of the evidence, and must draw all reasonable inferences, and resolve all conflicts, in favor of the judgment." (*People v. Poe* (1999) 74 Cal.App.4th 826, 830 [88 Cal.Rptr.2d 437].)

A. *Whether Defendant Has a "Current" Dangerous Mental Disorder*

Dr. Padilla and Dr. Paladino each testified that defendant suffers from pedophilia, a disorder which impairs his volitional capacity, and that he was likely to commit sexual predatory acts if released. Defendant nevertheless asserts that because these doctors testified only about crimes that were 12 and 17 years old, as well as other molestations which were even older, their opinions were based exclusively on his past conduct. Since the SVPA requires proof that an offender *currently* suffers from a mental condition that impairs his volitional control, defendant claims there is a dearth of evidence to support a finding that he is an SVP.

This argument is based upon an inaccurate and distorted view of the record. Both experts reviewed commitment evaluations and hospital records including notes by staff, psychologist notes, probation reports and court records. Each doctor compiled a complete criminal and social history for defendant and applied the Static-99 test, which utilizes 10 factors to assess the risk that sex offenders will commit new crimes upon release from prison. The result was that defendant fell within the medium-to-high-risk range. The doctors also cited other factors to support their opinions, including his *current* untreated alcohol abuse problem, his *current* refusal to undergo treatment for his pedophilia, and his poor performance under supervision. We therefore reject defendant's assertion that the conclusions drawn by the state's experts were solely predicated on prior sex crimes.

Defendant suggests that because there was no evidence he had "current manifestations" associated with sexual deviancy such as fantasies, antisocial outbursts or sexually violent behavior, the expert opinions relied upon by the trial court were unsupportable as a matter of law. We disagree.

First, defendant errs in supposing that he must presently engage in overt manifestations of a sexually violent predator in order to support an opinion that he still suffers from a mental disorder affecting his ability to control his impulses. The fact that defendant has not misbehaved in a strictly controlled hospital environment does not prove he no longer suffers from a mental disorder that poses a danger to others. Defendant has an abnormal attraction to female children. Because he currently lacks access to children, his lack of outward signs of sexual deviance is not dispositive of whether he is likely to reoffend if released into society at large. Such an assessment must include consideration of his past behavior, his attitude toward treatment and other risk factors applicable to the facts of his case. (*People v. Superior Court (Ghilotti)* (2002) 27 Cal.4th 888, 929 [119 Cal.Rptr.2d 1, 44 P.3d 949] (*Ghilotti*).) This was precisely the methodology followed by the prosecution's experts.

Second, we cannot overlook the significance of defendant's refusal to be interviewed by either of the state's experts. The law has a strong interest in seeing to it that litigants do not manipulate the system, especially where to hold otherwise would permit them to " 'trifle with the courts.' " (*People v. Ellis* (1987) 195 Cal.App.3d 334, 345 [240 Cal.Rptr. 708], quoting *City of Los Angeles v. Cole* (1946) 28 Cal.2d 509, 515 [170 P.2d 928].) Here, defendant fully cooperated with his own psychologist, while denying the People's doctors the opportunity to interview him (see fn. 2, *ante*). A sex offender cannot deny the state access to the workings of his mind and then claim a lack of proof that he has a "current" psychological disorder. Because he refused to be interviewed by the state's experts, who could have formed an

opinion as to his present dangerousness, defendant has forfeited the claim that the state did not prove that he was currently dangerous.[3]

Finally, defendant's refusal to undergo treatment constitutes potent evidence that he is not prepared to control his untreated dangerousness by voluntary means. In enacting the SVPA "[t]he Legislature declared the need to confine and treat a 'small but extremely dangerous group of sexually violent predators,' already incarcerated, who 'are not safe to be at large and if released [at the conclusion of their prison terms] represent a danger to the health and safety of others in that they are likely to engage in acts of sexual violence.' " (*Ghilotti, supra,* 27 Cal.4th at p. 919, quoting Stats. 1995, ch. 763, § 1.)

██ The availability of treatment is at the heart of the SVPA. (*People v. Buffington* (1999) 74 Cal.App.4th 1149, 1163 [88 Cal.Rptr.2d 696].) "Through passage of the SVPA, California is one of several states to hospitalize or otherwise attempt to treat troubled sexual predators." (*Hubbart v. Superior Court* (1999) 19 Cal.4th 1138, 1143 [81 Cal.Rptr.2d 492, 969 P.2d 584] (*Hubbart*).) Accordingly, one of the key factors which must be weighed by the evaluators in determining whether a sexual offender should be kept in medical confinement is "the person's progress, if any, in any mandatory SVPA treatment program he or she has already undergone; [and] *the person's expressed intent, if any, to seek out and submit to any necessary treatment . . . .*" (*Ghilotti, supra,* 27 Cal.4th at p. 929, italics added.) A patient's refusal to cooperate in any phase of treatment may

---

[3] In supplemental briefing, defendant assails the DMH policy of barring recordation of SVP interviews as a denial of equal protection, since DMH permits recordings in other situations. Defendant's constitutional argument is waived because it was never raised in the trial court. (*People v. Marchand* (2002) 98 Cal.App.4th 1056, 1061 [120 Cal.Rptr.2d 687].) It also lacks merit.

(3) " 'Absent the allegation of the invasion of fundamental rights or the existence of a suspect classification, there is no violation of equal protection unless the classification bears no rational relationship to a legitimate state interest.' " (*Del Oro Hills v. City of Oceanside* (1995) 31 Cal.App.4th 1060, 1082 [37 Cal.Rptr.2d 677], quoting *Long Beach Equities, Inc. v. County of Ventura* (1991) 231 Cal.App.3d 1016, 1041 [282 Cal.Rptr. 877].) SVP prisoners are certainly not a suspect class and defendant has no fundamental right to have his interviews recorded. The DMH policy serves the rational state purpose of preventing SVP interviewees from becoming distracted by the use of a tape recorder, thereby promoting complete candor and honesty during the interview process.

(4) Defendant also contends that our pronouncement violates due process and improperly shifts the burden of proof because it compels him to participate in an interview which could furnish the state with evidence that may be used against him. He misstates our holding. We do not require defendant to consent to be interviewed by the state's evaluators as a condition for obtaining his release. We merely say that he cannot have it both ways: He cannot bar the state from examining his *current* mental condition and preserve a claim on appeal that there was insufficient evidence of his *current* dangerous propensities to support an SVP finding.

therefore support a finding that he "is not prepared to control his untreated dangerousness by voluntary means if released unconditionally to the community." (*Ibid.*)

We conclude that defendant's refusal to accept treatment, coupled with a valid diagnosis that he suffers from a sexual disorder affecting his volitional capacity, are sufficient to sustain the court's finding that defendant will, if released to the community, "represent a *substantial danger* of committing similar new crimes . . . ." (*Ghilotti, supra,* 27 Cal.4th at p. 924, original italics.) No further proof of current dangerousness is required.

### *II.B.–III**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### *IV*

### *Ex Post Facto*

Defendant's final contention is that the SVPA, "as applied" to his case, violates the ex post facto clause of the state and federal Constitutions. This is so, according to defendant, because the SVPA's primary goal is to punish him for his past crimes. The defendant is precluded from making this argument.

The SVPA's primary goal is treatment. "The Act provides treatment for mental disorders from which [sex offenders] currently suffer and reduces the threat of harm otherwise posed to the public. No punitive purpose was intended." (*Hubbart, supra,* 19 Cal.4th at p. 1144.) Despite the fact that defendant is amenable to and has been offered treatment, he refuses to attend, believing he is not a danger to the community and that the doctors and staff members "do not know him and do not know what is in his head . . . ."

Defendant has the right to refuse treatment. But he cannot do so and at the same time assert that the statute is unconstitutional as applied because it focuses too much on punishment and not enough on treatment. By refusing treatment, defendant has failed to show injury as a result of the statute's application. (See *Schmier v. Supreme Court* (2000) 78 Cal.App.4th 703, 707 [93 Cal.Rptr.2d 580]; *In re Tania S.* (1992) 5 Cal.App.4th 728, 736–737 [7 Cal.Rptr.2d 60].)

---

*See footnote, *ante,* page 347.

## DISPOSITION

The judgment (order of commitment) is affirmed.

Sims, Acting P. J., and Raye, J., concurred.

Appellant's petition for review by the Supreme Court was denied July 13, 2005. George, C. J., did not participate therein. Kennard, J., was of the opinion that the petition should be granted.