Filed 7/17/14  P. v. Harris CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C074768 |
| Plaintiff and Respondent, | (Super. Ct. No. 96F00388) |
| v. | |
| LAURENCE EDWIN HARRIS, | |
| Defendant and Appellant. | |

Defendant Laurence Edwin Harris appeals the trial court's judgment committing him to a state hospital for an indeterminate term following a jury finding that he was a sexually violent predator (SVP) within the meaning of the Sexually Violent Predators Act (SVPA).  (Welf. & Inst. Code,[1] § 6600 et seq.)  He contends there is insufficient evidence:  (1) he suffers from a mental disorder that would make it difficult to control his

---

[1]     Undesignated statutory references are to the Welfare and Institutions Code.

criminally sexual behavior; and (2) he poses a substantial danger if released.  We conclude the jury's findings are supported by substantial evidence and affirm.

FACTUAL AND PROCEDURAL BACKGROUND

In April 2008, the People petitioned the trial court to commit defendant as an SVP. Based on the evidence summarized below, at the conclusion of the trial, the jury found defendant is an SVP, and the court committed the 70-year-old defendant to the custody of the California Department of State Hospitals for appropriate treatment and confinement for an indefinite term.

A

*Prior Criminal History*

Defendant was convicted of sexual penetration with a foreign object of a person incapable of resisting and sexual penetration with a foreign object by force based on events occurring in 1995.  Both victims were patients at the mental health facility where defendant worked.  Defendant partially undressed a catatonic patient, touched and sucked one of her breasts, rubbed his finger across her clitoris, kissed her on the mouth, and rubbed his penis with her hand.  He befriended the other patient and, after she was released, engaged in a sexual relationship with her.  One day, he arrived at her home uninvited, and forcibly touched her breast and vagina with his hands and mouth, despite her protests.

Defendant also had a 1972 conviction for first degree burglary with a great bodily injury finding.  Defendant had assaulted the female victim, a tenant at the apartment complex where he worked; had beaten her; and had cut the muscles from her vagina to her rectum.  He had "fantasized rape" and had selected the victim because he believed her unlikely to have a "protector."  When the encounter did not go as he had fantasized, he stabbed her in the chest with an ice pick and, after she lost consciousness, "shoved his hand into her vagina as a vicious and sexual expression of his anger."  Though defendant

2

denied having sexual intercourse with the victim, he was found shortly after the attack with blood on his penis.

Defendant had previously been charged with attempted rape in 1965, but was not convicted.[2]

B

*Prosecution Evidence*

Dr. Larry Wornian, a psychologist, evaluated defendant and was of the opinion that he suffers from paraphilia[3] not otherwise specified, a lifelong condition that predisposes defendant to commit sexually violent predatory acts. According to Wornian, this sexual disorder would make it difficult for defendant to control his sexual urges and paraphilic behavior. Wornian further testified, based on his assessment of defendant, that he poses a serious and well-founded risk of committing future sexually violent predatory offenses because of his mental disorder if released from a secure facility.

On cross-examination, Wornian testified that he had initially scored defendant as a "6" on the Static-99R index (a psychological assessment tool), but volunteered that he ought to have scored him as a "5"; either of these scores would have categorized defendant as a high-risk sex offender. After further questioning, Wornian conceded he should have scored defendant a "2" because Wornian had incorrectly accounted for defendant's age. This score places defendant in the "low moderate" range for risk of

---

[2]     The victim asked that the case not be prosecuted as she was moving out of state.

[3]     The Diagnostic and Statistical Manual of Mental Disorders, defines paraphilia as: "[r]ecurrent, intense sexually arousing fantasies, sexual urges, or behaviors generally involving (1) nonhuman objects, (2) the suffering or humiliation of oneself or one's partner, or (3) children or other nonconsenting persons that occur over a period of at least 6 months." Furthermore, "the behaviors, sexual urges, or fantasies cause clinically significant distress or impairment in social, occupational, or other important areas of functioning." (American Psychiatric Assn., Diagnostic and Statistical Manual of Mental Disorders (4th ed. 2000, text rev.) p. 566.)

recidivism. Notwithstanding this changed score, Wornian maintained that defendant posed a substantial and well-founded risk of reoffending. As Wornian explained, the Static-99R result is but one factor to be considered, and, in light of other dynamic factors, defendant still posed a substantial risk.

Among these dynamic factors were intimacy deficits, general self-regulation, sexual self-regulation, defendant's history, and his cooperation with supervision. While he noted that defendant had not engaged in sexual misbehavior while incarcerated and confined, Wornian reasoned this was likely due to a lack of access to victims, thus it did not impact Wornian's assessment of defendant. Wornian also took issue with defendant's perception that he was not a sex offender, predator or stalker, and that defendant did not think his trouble with women would be a problem anymore because of his age. Wornian found defendant's statements about his reduced sexual drive not credible because defendant also refused to acknowledge his prior criminal admissions and the sexual offenses, and because defendant was evasive in interviews. For Wornian, defendant's lack of self-perception and failure to engage in sex offender treatment while confined demonstrated a lack of insight, which indicated defendant was likely to reoffend. Wornian was also concerned with defendant's apparent desire to leave California upon his release so that he could go to Oregon, "where they are not as strict with sex offenders."

Wornian additionally considered defendant's cardiac health issues and his age, but discounted these as "protective factors" in this case. While it may be possible that at his advanced age defendant's sex drive had diminished, Wornian noted that defendant failed to avail himself of any group therapy relating to sexual offenses while at the state hospital, only attended sessions dealing with anger management, failed to reform despite prior state-mandated treatment, and lacked an adequate support network. And, though defendant's health issues would normally be a protective factor, they were not in this

4

instance because defendant uses manipulation rather than a high level of exertion to engage in his sexual misbehavior.

## C

### *Defense Evidence*

Dr. Christopher Fisher, also a psychologist, testified defendant's acts were of a criminal nature and not related to a mental disorder; that defendant did not suffer from paraphilia or any other diagnosed mental disorder because defendant could control his criminal behavior; and, based on his assessment of defendant using the Static-99R, that there was not a substantial well-founded risk defendant would reoffend. Fisher was of the opinion that defendant was not paraphilic because he did not obtain sexual gratification from the nonconsenting nature of his victims. Fisher also said defendant did not pose a substantial risk of reoffense, based on defendant's score of "2" of the Static-99R assessment and the fact that defendant had not acted inappropriately toward any female staff or other prisoners while at the state hospital. A psychiatric technician and defendant's treating psychologist from the state hospital both confirmed that defendant had not behaved sexually inappropriately while confined. Unlike Wornian, Fisher did not rely on "dynamic factors" because he considers them less reliable.

## DISCUSSION

"A person may be civilly committed as a sexually violent predator under the SVPA upon proof beyond a reasonable doubt that the person (a) has been convicted of two predicate sex offenses as defined in the statute, and (b) 'has a diagnosed mental disorder that makes the person a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior.' (§ 6600, subd. (a)(1); see § 6604.)" (*People v. Flores* (2006) 144 Cal.App.4th 625, 632.) Defendant does not dispute his qualifying prior convictions, but contends there is insufficient evidence he suffers from a "diagnosed mental disorder," as statutorily defined, or that he is likely to engage in sexually violent criminal behavior.

5

"When a defendant challenges the sufficiency of the evidence to support a finding that he is an SVP, 'this court must review the entire record in the light most favorable to the judgment to determine whether substantial evidence supports the determination below. [Citation.] To be substantial, the evidence must be " 'of ponderable legal significance . . . reasonable in nature, credible and of solid value.' " [Citation.]' [Citation.] 'In reviewing the record to determine the sufficiency of the evidence this court may not redetermine the credibility of the witnesses, nor reweigh any of the evidence, and must draw all reasonable inferences, and resolve all conflicts, in favor of the judgment.' " (*People v. Sumahit* (2005) 128 Cal.App.4th 347, 352.)

I

*Diagnosed Mental Disorder*

The crux of defendant's claim is that the prosecution's expert testified that defendant's paraphilia would make it difficult for him to control his behavior, but did not specifically opine that defendant's mental diagnosis would make controlling his criminal sexual behavior *seriously* difficult. Despite the lack of expert testimony expressly opining that defendant's diagnosis will cause him *serious* difficulty controlling his aberrant behavior, substantial evidence was presented that defendant suffers from a statutorily-defined "diagnosed mental disorder."

A "[d]iagnosed mental disorder" is "a congenital or acquired condition affecting the emotional or volitional capacity that predisposes the person to the commission of criminal sexual acts in a degree constituting the person a menace to the health and safety of others." (§ 6600, subd. (c).) Thus, to find that a person suffers from a "diagnosed mental disorder," the jury must find that the mental disorder "causes serious difficulty in controlling one's criminal sexual behavior." (*People v. Williams* (2003) 31 Cal.4th 757, 759-760, citing *Kansas v. Crane* (2002) 534 U.S. 407, 413 [151 L.Ed.2d 856, 862-863].)

6

The jury was instructed with standard jury instruction, CALCRIM No. 3454,[4] which tracks the statutory language of section 6600. We assume the jury properly followed this instruction (*People v. Cook* (2006) 39 Cal.4th 566, 610), and the California Supreme Court has previously concluded that "[j]urors instructed in these terms must necessarily understand that one is not eligible for commitment under the SVPA unless his or her capacity or ability to control violent criminal sexual behavior is seriously and dangerously impaired" (*People v. Williams*, *supra*, 31 Cal.4th at pp. 776-777). Thus, we conclude the jury's decision to commit defendant under the SVPA "necessarily encompasses a determination of serious difficulty controlling [his] criminal sexual violence." (*Id.* at p. 777.)

Moreover, this conclusion is supported by substantial evidence in the form of expert opinion testimony that defendant is unable to control his behavior as a result of his mental disorder. Wornian testified that defendant has demonstrated "aberrant sexual interests and engagements that span better than 30 years," acknowledged having rape fantasies, and "acted on his aberrant sexual interests on more than one occasion."

---

**4**     As given, the instruction reads, in pertinent part: "The petition alleges that [defendant] is a sexually violent predator. To prove this allegation, the People must prove beyond a reasonable doubt that: [¶] 1. He has been convicted of committing sexually violent offenses against one or more victims; [¶] 2. He has a diagnosed mental disorder; [¶] 3. As a result of that diagnosed mental disorder, he is a danger to the health and safety of others because it is likely that he will engage in sexually violent predatory criminal behavior; AND [¶] 4. It is necessary to keep him in custody in a secure facility to ensure the health and safety of others. [¶] The term 'diagnosed mental disorder' includes conditions either existing at birth or acquired after birth that affect a person's ability to control emotions and behavior, and predispose that person to committing criminal sexual acts to an extent that makes him or her a menace to the health and safety of others. [¶] A person is likely to engage in sexually violent predatory criminal behavior if there is a substantial danger -- that is, a serious and well-founded risk -- that the person will engage in such conduct in the future . . . if released into the community. [¶] The term 'likely' in this petition means much more than a possibility, but it does not mean more likely than not. In other words, the likelihood that a person will engage in such conduct does not have to be greater than 50 percent."

7

Wornian further noted that defendant had failed to conform despite previously being incarcerated and subjected to state-mandated sex offender treatment, and reasoned away any lapse in the misbehavior while defendant was confined. We conclude Wornian's opinion is reasonable based on the facts, is " ' "of ponderable legal significance," ' " and is substantial evidence supporting the jury's finding that defendant suffers from a "diagnosed mental disorder." (*People v. Sumahit*, *supra*, 128 Cal.App.4th at p. 352.)

II

*Likely To Reoffend*

Defendant also contends there is insufficient evidence that he is likely to reoffend because he only scored a "2" on the Static-99R assessment, he had no criminal offenses in the 17-year period between his convictions, and he is 70 years old with health issues. We conclude the prosecution expert's opinion testimony that defendant poses a substantial and well-founded risk of recidivism is substantial evidence to support the verdict, despite the defense expert's opinion testimony to the contrary.

"The jury 'must conclude that [a] person is "likely" to reoffend if, because of a current mental disorder which makes it difficult or impossible to restrain violent sexual behavior, the person presents a substantial danger, that is, a serious and well-founded risk, that he or she will commit such crimes if free in the community.' (*People v. Superior Court* (*Ghilotti*) (2002) 27 Cal.4th 888, 922 . . . .) This standard requires 'much more than the mere possibility that the person will reoffend,' but it does not call for 'a precise determination that the chance of reoffense is better than even.' " (*People v. Flores*, *supra*, 144 Cal.App.4th at p. 632, italics omitted.)

In reviewing a decision to commit a defendant under the SVPA, a conflict among experts' opinions does not render evidence supporting a judgment insufficient. (*People v. Flores*, *supra*, 144 Cal.App.4th at pp. 632-633.) While Wornian conceded defendant posed a low-moderate risk based on the Static-99R assessment, in his opinion defendant was likely to engage in sexually violent predatory behavior as a result of his mental

8

disorder if he were released based on Wornian's review of various dynamic factors.  In finding that defendant satisfied the criteria for confinement, the jury necessarily rejected Fisher's contention that defendant's age and health issues made him unlikely to reoffend, and accepted Wornian's opinion that defendant was likely to recidivate.  The jury determines the credibility and weight of such evidence, and we do not reevaluate it. (*People v. Flores*, *supra*, 144 Cal.App.4th at p. 633, citing *People v. Poe* (1999) 74 Cal.App.4th 826, 831 & *People v. Mercer* (1999) 70 Cal.App.4th 463, 466-467.) Wornian's opinion is " ' "reasonable in nature, credible and of solid value" ' " (*Mercer*, at p. 466) from which the jury could conclude defendant posed a serious and well-founded risk to reoffend.

DISPOSITION

The judgment is affirmed.


           ROBIE           , J.


We concur:


       RAYE          , P. J.


       HOCH          , J.