Filed 12/1/20  P. v. Clark CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Tehama)

----

| | |
|---|---|
| THE PEOPLE, | C089935 |
| Plaintiff and Respondent, | (Super. Ct. No. 18MH000001) |
| v. | |
| MISHAKAL CLARK, | |
| Defendant and Appellant. | |

Defendant, Mishakal Clark, appeals from his commitment as a sexually violent predator (SVP) following a court trial.  He argues substantial evidence does not support that:  (1) he was currently unable to control his dangerous sexual behavior, and (2) he could not be safely treated within the community.  Disagreeing, we will affirm.

1

BACKGROUND

On January 25, 2018, the People filed a petition to commit defendant as an SVP. (Welf. & Inst. Code, § 6600 et seq.)[1]  Following a probable cause hearing on April 19, 2018, defendant was committed to a state hospital pending trial.  Defendant waived his right to a jury trial and the matter was tried to the court.

At trial, the parties stipulated to the expertise of the People's experts, Dr. Robert M. Owen and Dr. Steven Lovestrand, and agreed to enter their previous reports and supplemental reports into evidence.  The parties also stipulated to the admission of the packet concerning defendant's previous juvenile adjudication and the court took judicial notice of defendant's convictions for failing to comply with sex offender registration requirements and possession of child pornography.

Dr. Owen testified to interviewing defendant twice, first on October 30, 2017, and then on March 22, 2019.  The first interview was to determine whether defendant met the criteria as an SVP and the second interview was to determine whether substantial changes altered Dr. Owen's original conclusion, which they had not.  In conducting his assessment, Dr. Owen also reviewed defendant's records, including his prison file and abstracts of judgment.

Defendant's records showed that in 2001 he had committed an aggravated sexual assault.  Defendant, then 16 years old, took a three-year-old child into the bushes at a swimming hole.  He penetrated her and attempted sexual intercourse before removing her bathing suit and rubbing his penis on her vagina until he ejaculated, and then he let her go.  Defendant was placed at the California Youth Authority (CYA) for approximately five years for this offense.  Following his parole from the CYA, defendant did not comply with his release conditions and absconded.  He was arrested at a campground

---

[1]  Undesignated statutory references are to the Welfare and Institutions Code.

2

with his wife and her three-year-old daughter[2] and was sent to prison. After his release from prison in 2013, defendant was again placed on parole. A search of defendant's phone by his parole officer uncovered 43 images of child pornography. Defendant also acknowledged hiding two thumb drives outside the parole office containing videos of child sexual abuse, including a video of 1 hour and 40 minutes depicting the sexual abuse of a six-year-old girl.[3] Defendant was arrested, convicted, and sentenced to a new prison term for possession of child pornography.

Dr. Owen opined that defendant currently suffered from pedophilic disorder.[4] He based this opinion on defendant's 2001 sexual abuse of a three year old wherein he ejaculated, the child pornography, and defendant's admission that he found child pornography arousing, and as of March 2019, still had "pop-up thoughts of [an] erotic nature involving children, although he [was] getting better at suppressing those thoughts." Dr. Owen also thought it noteworthy that defendant had sex with his 10-year-old brother when he was 14 years old, and had sexual contact with animals. While defendant mostly masturbated to adult females, he admitted to sometimes thinking about children under the age of eight. "He would think about them, fantasize about them and masturbate. And that really buttresses the diagnosis of pedophilic disorder when you

[2] There was no evidence defendant abused this child, but Dr. Owen testified this did not mean he would not abuse a stranger child and could also have been explained if that particular child was not attractive to him. Further, Dr. Lovestrand testified that most pedophiles either abuse individuals they know or strangers (incest versus extrafamilial), and that extrafamilial offenders are more likely to reoffend.

[3] Dr. Lovestrand testified there were also nearly 500 pornographic images on these flash drives of children between the ages of one and eight.

[4] Dr. Owen defined pedophilic disorder as "involv[ing] at least six months of fantasies, urges or behaviors involving a child under the age of 13 and the perpetrator must be [16] years or older and it has to result in some kind of impairment in the individual, either a legal consequence as we have here or distress about the individuals actions."

have these fantasies paired with masturbation, paired with ejaculation." Defendant acknowledged still thinking about children even after going to prison for child pornography.[5]

Dr. Owen also performed assessments to evaluate defendant's risk. Defendant's score on the Static-99 indicated a high risk of reoffense. Defendant's score was an eight, while an average sex offender would score a two. The assessment rated defendant's likelihood of being caught and charged for a new sexual offense as 36 percent over five years and 48 percent over 10 years. Defendant also scored high on the dynamic risk evaluation, which considered his sexual deviance, failure to have long-term, meaningful relationships, and poor impulse control. He did, however, register low on the psychopathy assessment.

Dr. Owen opined defendant posed a substantial risk of sexually reoffending in a predatory way due to his mental disorder without appropriate in-custody treatment. Dr. Owen further opined that defendant's pedophilic disorder impaired his volition and put him at risk of acting on his impulses. That defendant was forthcoming concerning his sexual proclivities, including the hidden flash drives, was not tied to whether he is more or less dangerous. In fact, his failure to cooperate with supervision on parole strongly indicated a high risk of reoffense. Nonetheless, if defendant completed the treatment program at the state hospital,[6] he could be one-third less likely to be arrested for a reoffense, even though pedophilia is a lifelong condition.

---

[5] On cross-examination, Dr. Owen stated that defendant told him he no longer masturbates when children pop into his head (occurring about once a month), but rather "he had learned to stop masturbating to those." However, Dr. Lovestrand relayed that defendant had admitted that he still had thoughts about children when masturbating, which he tries to redirect.

[6] As of April 2019, defendant was in the "early phases of treatment," although his progress was "steady."

4

Dr. Lovestrand also conducted a section 6600 evaluation of defendant, reviewing his records and interviewing him twice, the first time for his initial evaluation in November 2017 and the second approximately a month before trial to evaluate defendant's continuing risk. Dr. Lovestrand recounted defendant's personal and criminal history and then opined defendant had three diagnosable mental disorders that predisposed him to commit criminal sexual acts: pedophilic disorder, alcohol use disorder, and marijuana use disorder, the latter two being in remission. Defendant actively suffered from pedophilic disorder, as he was still having fantasies involving children and that disorder would remain stable absent effective treatment to counteract it.

In assessing defendant's ongoing risk, Dr. Lovestrand performed the Structured Risk Assessment Forensic Version to measure dynamic risk factors and the Static-99 assessment. Both tests placed him in an above-average risk for reoffense, and defendant's score of eight on the Static-99 assessment placed him in the 99th percentile. Defendant's above-average dynamic risk, his high static risk, combined with his poor impulse control and history of absconding placed defendant at high risk of reoffense without appropriate treatment and custody.[7] While defendant was actively engaging in the SVP program at Coalinga State Hospital, defendant had not made sufficient progress through that program to alter Dr. Lovestrand's diagnosis and opinion. When asked about community treatment, Dr. Lovestrand opined that defendant could not "be safely and effectively treated in the community instead of in a locked, secure facility" and that community treatment was not "the best option for him."[8]

---

[7] Dr. Lovestrand's report observed defendant's volitional impairment in his viewing child pornography after having served time for a prior sex offense and in his repeated returns to these pornographic sites, despite his attempts to stop thinking about children sexually.

[8] Dr. Owen's report also rejected the appropriateness of community-based treatment.

Following its review of all the reports and in light of the expert testimony, the court found that defendant was an SVP who could not be safely treated within the community at this time. Accordingly, the court sustained the petition and committed him to a state hospital for treatment for an indefinite term. Defendant timely appealed.

STANDARD OF REVIEW

We review the entire record in the light most favorable to the judgment to determine whether substantial evidence supports the factfinder's determination that defendant currently suffers from a diagnosed mental disorder as described by the statute. (*People v. Mercer* (1999) 70 Cal.App.4th 463, 466.) To be substantial, the evidence must be " ' "of ponderable legal significance . . . reasonable in nature, credible and of solid value." ' " (*Ibid*.) " '[I]t is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts on which that determination depends.' " (*People v. Poulsom* (2013) 213 Cal.App.4th 501, 518 (*Poulsom*).) If substantial evidence supports the verdict, " 'we must accord due deference to the trier of fact and not substitute our evaluation of a witness's credibility for that of the fact finder.' [Citation.] This is true even in the context of expert witness testimony." (*Ibid*.) The credibility of an expert and his or her conclusions are to be resolved by the factfinder; " '[w]e are not free to reweigh or reinterpret [that] evidence.' " (*Ibid*.)

DISCUSSION

I

Defendant contends insufficient evidence supports the trial court's determination that he was currently unable to control his dangerous sexual behavior because the experts' conclusory opinions are not substantial evidence. We disagree.

The requirements for classifying someone as an SVP are set forth in section 6600. The statute defines a " '[s]exually violent predator' " as "a person who has been convicted of a sexually violent offense against one or more victims and who has a diagnosed mental disorder that makes the person a danger to the health and safety of

6

others in that it is likely that he or she will engage in sexually violent criminal behavior." (§ 6600, subd. (a)(1).) The phrase " '[d]iagnosed mental disorder' " includes "a congenital or acquired condition affecting the emotional or volitional capacity that predisposes the person to the commission of criminal sexual acts in a degree constituting the person a menace to the health and safety of others." (§ 6600, subd. (c).) Thus, to commit defendant as an SVP, the factfinder had to determine that defendant was previously convicted of a violent sexual offense and that he suffered from a mental disorder affecting his volitional or emotional capacity, thereby making him a danger to others because he was likely to engage in sexually violent criminal behavior. (*Poulsom, supra*, 213 Cal.App.4th at p. 517.)

Defendant does not dispute that his prior convictions qualify as sexually violent offenses within the meaning of the statute. (§ 6600, subd. (b) [defining " '[s]exually violent offense' "].) He only challenges the sufficiency of the evidence bearing on the latter requirement. According to defendant, one cannot decide whether a mental disorder makes the person a danger unless there is testimony concerning the etiology of that condition.

But the root cause of defendant's mental disorder is not relevant under the statute. Instead, section 6600 requires only that defendant's mental disorder causes him to be a danger to others in that he is likely to engage in sexually violent predatory behavior. (§ 6600, subd. (a)(1).) The underlying etiology of the mental disorder—or what made him a pedophile in the first instance—is simply not in question. When viewed in the proper context, then, the issue is whether the record contains sufficient evidence that defendant is a danger to society because his diagnosed pedophilia makes it likely he will commit predatory acts of sexual violence if released.

We are satisfied that the People's expert testimony and reports constitute substantial evidence that defendant is a danger to others because he was likely to engage in sexually violent criminal behavior. (*Poulsom, supra*, 213 Cal.App.4th at p. 517;

7

*People v. Superior Court (Ghilotti)* (2002) 27 Cal.4th 888, 924 (*Ghilotti*) [due process requires a showing there is a "*substantial danger* of committing similar new crimes"].)

As explained at length above, both Dr. Owen and Dr. Lovestrand opined defendant then suffered from pedophilic disorder, which may endure for a lifetime unless aggressively treated. During his qualifying offense, defendant, then 16 years old, took a three-year-old child into the woods, removed her swimsuit, penetrated her, attempted sexual intercourse, and then rubbed his penis against her vagina to masturbate to climax. Defendant's victim was a stranger child, and extrafamilial offenders are more likely to reoffend. Defendant participated in sex offender treatment at the CYA, but was unable or unwilling to control his sexually deviant thoughts following his release and was rearrested for possession of child pornography. This behavior and his inability to stop viewing child pornography, despite his attempts to stop thinking about children sexually, showed defendant's poor volitional control.

While defendant was actively participating in treatment at the state hospital, he was only in the early stages. Defendant himself admitted to still having pop-up fantasies concerning children, at least some of which occurred during masturbation. Further, assessment testing by both doctors put defendant at an extremely high risk for reoffense. Defendant's above-average dynamic risk, his high static risk, combined with his poor impulse control, and history of absconding from authorities placed defendant at high risk of reoffense without appropriate treatment and custody. In light of this information, both doctors opined defendant posed a substantial risk of reoffending in a predatory way due to his mental disorder without appropriate custodial treatment. This is substantial evidence supporting the trial court's SVP commitment.

II

Defendant further challenges his SVP commitment arguing that substantial evidence does not support the trial court's determination that he could not be safely treated within the community. We disagree.

8

While amenability to treatment within the community is one factor that the trial court must consider in determining whether to commit an individual as an SVP (see *People v. Shazier* (2014) 60 Cal.4th 109, 131 [trial court must consider whether an individual's dangerous mental condition requires confinement or whether outpatient treatment could eliminate the substantial risk of reoffense]; *Ghilotti, supra*, 27 Cal.4th at pp. 926-928 [same]), here, we find substantial evidence supports the conclusion that defendant could not be safely treated within the community.

Defendant failed parole on two occasions by absconding and in one instance reoffending through possession of a sizable cache of child pornography that included around 500 pornographic images of prepubescent girls and two videos of sexual abuse of girls around six years of age. Defendant admitted he still had pop-up sexual thoughts about children, some of which occurred during masturbation, although he was trying to alter this behavior. Defendant also had extremely high-risk-for-reoffense scores from assessments conducted by both Dr. Owen and Dr. Lovestrand.

Dr. Lovestrand opined that community treatment was not "the best option" for defendant and that without appropriate "treatment and custody," defendant would be at high risk to reoffend. Dr. Lovestrand worried that defendant lacked the motivation to voluntarily pursue sex offender treatment that was not affirmatively required of him. Dr. Owen likewise rejected the appropriateness of community-based treatment. He noted defendant's postrelease plans included parole outpatient treatment, but not a formal sex offender treatment program. Dr. Owen was also concerned that defendant's lack of resources, including his history of homelessness and unemployment, would preclude him from obtaining community-based treatment.

Thus, even though defendant expressed an interest in treatment, was participating in treatment in a custodial setting at the state hospital, and there was no affirmative evidence offered that there were no outpatient treatment programs in defendant's community, defendant's poor performance on parole, combined with his continuing

9

pedophilia, and high-risk assessments constituted substantial evidence supporting the court's determination that *custodial* treatment was necessary. (See *People v. Shazier, supra*, 60 Cal.4th at pp. 131-133 [factfinder has latitude to consider external factors bearing on the ultimate issue: whether the individual is likely to reoffend without confinement].)

We are unpersuaded by defendant's arguments that he had not committed a new offense against a child since 2001. As explained by Dr. Owen, defendant spent the majority of that time in prison, did not have the opportunity to reoffend against children in prison, and thus, his lack of reoffense merely goes to his outward behavior in a custodial setting. (See, e.g., *People v. Sumahit* (2005) 128 Cal.App.4th 347, 353 [absence of assault of staff merely shows the defendant's behavior in controlled setting].) Further, that defendant appears not to have reoffended with his three-year-old stepdaughter is not dispositive of whether he would reoffend against another *stranger* child. Finally, defendant's possession of sizeable amounts of child pornography of prepubescent girls in 2013 following his completion of sex offender treatment in the CYA further supports defendant's continuing risk to the community.

DISPOSITION

The judgment is affirmed.

      /s/                <br/>
RAYE, P. J.

We concur:

    /s/               
BLEASE, J.

    /s/               
KRAUSE, J.