Filed 11/7/22  P. v. Williams CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Calaveras)

----

| | |
|---|---|
| THE PEOPLE, | C095678 |
| Plaintiff and Respondent, | (Super. Ct. No. CR3239) |
| v. | |
| KENFORT ROBIN WILLIAMS, | |
| Defendant and Appellant. | |

Defendant Kenfort Robin Williams appeals from the trial court's order extending his commitment to a state hospital under Penal Code[1] section 1026.5.  Defendant contends there is insufficient evidence:  (1) he posed a "*substantial* danger of physical harm to others," and (2) he had "*serious difficulty in controlling dangerous behavior*."  Defendant further contends that the order for extended commitment violated the due process clause of the Fourteenth Amendment.  We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

In 1993, defendant was arrested for possession of methamphetamine, drug paraphernalia, and a loaded firearm.  While on bail later that year, defendant fired a

---

[1]     Undesignated section references are to the Penal Code.

machine gun at two police officers and one police dog, wounding all three. He was found not guilty by reason of insanity of two counts of attempted murder, two counts of assault on a peace officer, one count of possession of a machine gun, and one count of shooting a police dog.

Defendant was committed to a state hospital pursuant to section 1026. His latest commitment to Atascadero State Hospital (Atascadero) was set to end in January 2022. On the advice of senior psychiatrist Dr. Joshua C. Deane and the state hospital medical director, the District Attorney of Calaveras County petitioned the trial court to extend defendant's commitment.

A jury trial on the petition began December 15, 2021. Deane was the sole witness to testify on behalf of the prosecution. No one testified on behalf of defendant.

I

*Dr. Deane's Testimony*

Dr. Deane is a psychiatrist at Atascadero.[2] Defendant arrived at Atascadero in 2009 after he attempted to escape from a lower security hospital. Dr. Deane had been familiar with defendant's condition and treatment since 2011.

At the time of his commitment, defendant had a 30-year history of alcohol use. He also developed a methamphetamine addiction at the age of 51. Defendant was diagnosed with alcohol and amphetamine dependence and an unspecified personality disorder. Although defendant met most of the criteria for antisocial personality disorder, he could not be formally diagnosed because he lacked a juvenile criminal record. Instead, defendant's official diagnosis was "other unspecified personality disorder" with antisocial and paranoid features.

The antisocial feature of defendant's personality disorder derived from his "extensive criminal records," pattern of disregard for the safety of others, and disdain for

---

[2] The parties stipulated that Deane was qualified to testify as an expert in this case.

legal authority.  Defendant's other antisocial features included lack of remorse, impulsivity, and deceitful behavior.  The paranoid feature referred to defendant's tendency to be suspicious of others and read harmful intent or content into otherwise benign statements.  Dr. Deane testified defendant tended to assume the worst of others and felt the system was against him and that other people were out to get him personally.  Defendant had difficulty getting along with unfamiliar hospital staff and with those who he perceived as being "against" him.

While at Atascadero, defendant was always "absolutely adamant" that the only goal of the hospital staff was to keep him in the hospital, no matter how well he progressed.  After Dr. Deane testified at another of defendant's extension hearings in 2014, defendant was so suspicious of Dr. Deane that he refused to speak to Dr. Deane for many years.  Whenever Dr. Deane approached him, defendant would either yell at him or give him the "silent treatment."  In June of 2021, when Dr. Deane approached defendant to discuss his upcoming extension, defendant was verbally abusive and told him to "get the [j]udge F'd."

Two weeks before trial, defendant began speaking to Dr. Deane again, to the doctor's "surprise and delight."  For the first time during his nearly three decade-long commitment, defendant admitted to having a mental disorder.  He also acknowledged the damage substance abuse had caused in his life and said he "would never use [substances] again, and he has lost family, friends, and . . . forty acres of land in Hawaii."  But the following week, defendant said his personality disorder was nothing more than a "personality trait," and he was just a "grumpy man."  He did not see his "grumpiness" as a problem and said others should accept him as he is.  He again accused the hospital of unfairly keeping him committed while releasing other patients he perceived as similarly situated.

Personality disorders -- unspecified or otherwise -- do not have a specific treatment.  Treatment is aimed at increasing self-awareness and learning to modulate

behaviors, which involves a combination of approaches to address individual manifestations of the disorder. Antisocial personality disorder is "very difficult to get rid of." There are no "magic pills," and addressing symptoms takes a "very concerted effort." Some patients with personality disorders may be recommended for release if they can demonstrate an ability to manage symptoms to a sufficient degree, but Dr. Deane did not see defendant as "ready to address any of those issues."

Dr. Deane testified that, in his opinion, defendant's personality disorder remained intact, and his propensity for substance abuse relapse had not diminished. Although defendant recently acknowledged his personality disorder, he still did not see it as an issue, which Dr. Deane believed made it unlikely defendant would take steps to manage it. Although defendant received some substance abuse treatment intermittently while in the hospital, he was not actively in treatment, "[a]nd he does not want to receive any treatment." While defendant had consistently achieved high marks in his job at the hospital library -- a widely coveted position -- Dr. Deane saw this mainly as evidence of his ability be "strategically nice and pleasant" under some circumstances. Dr. Deane believed defendant was nevertheless "still a very oppositional and petulant . . . person with disdain for legal authority, with poor impulse control."

Dr. Deane attributed defendant's abstinence from alcohol and drugs to his confinement in the hospital environment and said defendant still lacked insight into his ability to control his substance use. Other than his recent statement that he would never use substances again, defendant had been dismissive of the issue. He had not demonstrated a good attitude or commitment to remaining sober and never discussed plans to seek substance abuse therapy outside the hospital. "[H]is position is that he will never use again, hence there is no need for anything." Dr. Deane believed this to be "woefully insufficient" as a relapse prevention plan, in part because there was no evidence defendant had an adequate support structure outside the hospital.

4

Defendant was in contact with his son and said, if he were released from the hospital, his son would be able to help him get back on his feet. Dr. Deane attempted to reach defendant's son in the weeks before the hearing, but those phone calls and voice mails went unanswered. Defendant also expressed he did not want to live with his son and would prefer to live independently. He did "not want to have anything to do with . . . other people's help." Dr. Deane believed a lack of sufficient support to aid defendant in his transition out of the hospital would increase defendant's chance of relapsing. He also believed defendant was highly likely to become violent if faced with logistical difficulties transitioning into society.

Although he acknowledged defendant had not been physically violent since 1993, Dr. Deane still considered defendant at risk for violent behavior. While defendant was not physically violent during his nine-month conditional release, he ultimately had to return to the hospital due to his "constant arguing" with staff, difficulties with fellow residents, and refusal to attend support group meetings. Dr. Deane and other doctors at Atascadero took special care not to provoke defendant, but the moment someone raised a subject "not to his liking," defendant would "go ballistic." Staff knew not to risk aggravating him, and if he cursed at them, they would simply walk away. But were defendant to be released and a similar situation happened outside the hospital setting, the consequences could be very different. In Dr. Deane's view, "what he has accomplished [in an institutional setting] is no match for the reality. It could be a cold, mean street out there if you are on your own . . . ."

Dr. Deane had not observed any fundamental change in defendant's condition since he first began seeing him in 2011. At the time of his original commitment, defendant believed he was "living in a police state" and that "we need . . . anarchy" or "some revolution for the next two or three years . . . before we get back to normal." Decades later, defendant was still "against the system," which was why he refused to talk to Dr. Deane for many years. In Deane's opinion, these views stemmed primarily from

5

the psychotic feature of defendant's personality disorder, although at times, defendant's drug and alcohol use likely further impaired his impulse control and made his existing problems worse.

Dr. Deane further expressed the opinion that defendant's personality disorder was "very much" a contributing factor to his original offense, which targeted a government system defendant felt was against him . Indeed, during his drunk driving arrest, an officer used defendant's cell phone without permission. Defendant filed a complaint because he believed the department should reimburse him for the call. When he was not reimbursed, defendant became aggravated and fired a machine gun at police officers. Without evidence of any material change to his personality difficulties, Dr. Deane believed defendant was likely to commit a similar violent offense if released, particularly if he had to deal with the frustrations of government bureaucracy transitioning back into society.

Dr. Deane testified defendant remained "easily excitable, irritable and paranoid" about police and held antigovernment views and sentiments. His "disdain for the legal authority" and feeling of unfair treatment had not subsided. Defendant also continued to be verbally abusive to Dr. Deane and other hospital staff. Defendant was a trained soldier. At nearly 80 years old, the risk of defendant "boxing someone" or "hav[ing] a fist fight" may be minimal, but he remained "physically capable [of] pull[ing] the trigger or setting fire" to something, an important consideration to Dr. Deane due to the nature of defendant's original offense. His impulse control remained deficient, and when things do not "go his way," defendant can turn "potentially very volatile . . . if not violent."

Thus, at the time of the commitment hearing, it was Dr. Deane's opinion that defendant had a mental disorder meeting the statutory requirements and had difficulty controlling his dangerous impulses. Dr. Deane stated "with a high degree of medical certainty" that defendant remained fundamentally unchanged and, given the difficulties

he would face outside the hospital, he would pose a substantial danger of physical harm to others if released.

## II

### *The Jury's Finding And The Court's Order*

The jury unanimously found defendant suffered from a mental disease, defect, or disorder, and that as a result, he posed a substantial danger of physical harm to others and had serious difficulty controlling his dangerous behavior.  Based on the jury's finding, the trial court ordered defendant be recommitted to Atascadero until January 10, 2024.  Defendant appeals.

## DISCUSSION

Defendant does not dispute the jury's finding he has a mental disease, defect, or disorder meeting the statutory requirements.  (See *People v. Williams* (2015) 242 Cal.App.4th 861, 872 (*Williams*) [finding whether defendant's condition qualifies under § 1026.5 is " 'not a question of law, but rather one for the trier of fact to be resolved with the assistance of expert testimony' "].)  Rather, defendant contends insufficient evidence supports the jury's findings that due to his disease, defect, or disorder, he represents a substantial danger of physical harm to others and has serious difficulty controlling his dangerous behavior.  We disagree.

Under section 1026.5, subdivision (b)(1), "A person may be committed beyond the term prescribed by subdivision (a) . . . only if the person has been committed under Section 1026 for a felony and by reason of a mental disease, defect, or disorder represents a substantial danger of physical harm to others."  This has been interpreted to require "proof that the person has serious difficulty controlling . . . dangerous behavior." (*Williams*, *supra*, 242 Cal.App.4th at p. 872; see *People v. Galindo* (2006) 142 Cal.App.4th 531, 536.)

We review an order to extend commitment under section 1026.5 for substantial evidence, examining the entire record in the light most favorable to the order to

7

determine whether a rational trier of fact could have found the requirements of the statute satisfied beyond a reasonable doubt. (*People v. Zapiesk* (2007) 147 Cal.App.4th 1151, 1165.) A single psychiatric opinion can justify an order to extend commitment, so long as the opinion is supported by "relevant, probative facts." (*People v. Redus* (2020) 54 Cal.App.5th 998, 1011.)

I

*The Evidence Was Sufficient To Find Defendant*

*Poses A Substantial Danger Of Physical Harm To Others*

Defendant argues there was insufficient evidence he represents a danger of physical harm to others, and that even if there was proof of *some* danger to others, that danger was not *substantial*, and was not proven beyond a reasonable doubt. Specifically, defendant argues facts in the record -- including his lack of a juvenile record, ability to retain a coveted job at the hospital library, and prolonged period without exhibiting physically violent behavior -- imply he would not pose a substantial risk of harm to others if unconditionally released. We disagree. Although there are some mitigating factors in defendant's case, such as his good job performance, the jury also heard evidence of defendant's continued volatile behavior, demonstrated disdain for authority, and refusal to seek treatment, all of which support a finding beyond a reasonable doubt that defendant poses a substantial danger to others. And contrary to defendant's argument, defendant's lack of a juvenile record does not imply he would not pose a risk of harm to others if he were released today.

Defendant relies heavily on the fact that he has not been physically violent since 1993, even during the nine months he spent on conditional release. Although relevant to consider, this fact is not dispositive. Further, Dr. Deane attributed defendant's lack of physical violence and drug use to his being in the controlled hospital setting, which necessarily informs the determination of "whether [defendant] is likely to reoffend if released into society at large," in light of "his past behavior, his attitude toward treatment

8

and other risk factors applicable to the facts of his case." (Cf. *People v. Sumahit* (2005) 128 Cal.App.4th 347, 353 [finding a defendant's lack of "overt manifestations of a sexually violent predator" while in the hospital was "not dispositive of whether he [wa]s likely to reoffend if released into society at large"].) And while defendant did not use substances or engage in physical violence while on conditional release, he was in a controlled environment with resources targeted to help him. Even then, defendant ultimately had to return to a state hospital due to his hostile behavior and failure to engage with prescribed treatment on conditional release. The jury could have reasonably concluded that, were defendant to be unconditionally released, he would face even greater difficulties, and -- absent any evidence of him addressing his personality disorder in the interim -- there was no reasonable doubt he would pose a substantial risk of harm to others.

Defendant further argues Dr. Deane's testimony was undermined by his rendering of "opinions by a preponderance of the evidence," because his "quantitative opinion was it was 'more likely than not' " defendant would be violent again if released. This argument lacks merit. As an initial matter, saying something is "more likely than not" is not inherently inconsistent with it being virtually certain. (See *People v. Superior Court (Ghilotti)* (2002) 27 Cal.4th 888, 916-919 [exploring various definitions of "likely" and "more likely than not" and acknowledging meanings may vary depending on the context in which they are used].) And as the People point out, the jury, regardless of Dr. Deane's own degree of certainty that his opinions were true, was free to agree with the opinions themselves and, based on that, find there was no reasonable doubt defendant would pose a substantial danger of harm to others if released. That being so, here, the step the jury needed to take from Dr. Deane's stated certainty to a beyond-a-reasonable-doubt finding was minimal and supported by the substance of Dr. Deane's testimony apart from his quantitative statement.

Moreover, defendant mischaracterizes the testimony when making his insufficiency argument. He refers to a point on cross-examination when Dr. Deane testified the likelihood of defendant being violent again if released was "high," and when asked if the likelihood was 50 percent, the doctor replied, "I think more than fifty percent." But Dr. Deane then went on to testify he believed "to a high degree of medical certainty" defendant would be violent again if released, a position he said his report made "crystal clear." When asked if he would say it was likely beyond a reasonable doubt, Dr. Deane said, "that is my sort of opinion," but "ultimately it's for the . . . jury to decide." Dr. Deane's "more likely than not" statement was an answer to a question, not the way he chose to define his opinion, and he repeatedly emphasized his opinion that defendant remained a danger to others. The record makes clear Dr. Deane had a high level of certainty in this opinion, and there is ample evidence from which a jury could have based a finding beyond reasonable doubt.

We conclude substantial evidence shows defendant remained dangerous to others by reason of his mental disease, defect, or disorder.

II

*Sufficient Evidence Supported The Finding*

*Defendant Had Serious Difficulty Controlling His Dangerous Behavior*

Defendant next argues there is insufficient evidence to show he had substantial difficulty controlling his behavior, since Dr. Deane's testimony was based on "guess, surmise, and conjecture," and thus lacked foundation. To the extent there is any debate as to whether proper foundation was laid for Dr. Deane to testify as a qualified expert, we conclude the foundation was adequate under Evidence Code section 801, as was stipulated at trial. As we understand it, however, the crux of defendant's argument is that no factual basis existed to support Dr. Deane's opinion defendant had serious difficulty controlling his dangerous behavior.

10

In support of his argument, defendant relies on *People v. Redus* (2020) 54 Cal.App.5th 998.  In *Redus*, as here, the defendant had not been physically violent since his original commitment offense decades before.  (*Id.* at p. 1011.)  But in *Redus*, "there had not been a *hint* of violence, threatening behavior, or aggressiveness *of any kind* on the part of appellant over multiple decades, even through [conditional] releases and medication lapses." (*Id.* at p. 1012, italics added.)  Not so here.  Dr. Deane's opinion was not based on "guess, surmise, or conjecture," but on defendant's continued pattern of aggressive and volatile behavior.  (*Id.* at p. 1011 [substantial evidence must be based on "relevant, probative facts"].)  Indeed, Dr. Deane's testimony included specific and recent examples of such behavior.  Although there was evidence of defendant's ability to "strategically be[] nice and pleasant" under some circumstances, "[t]he issue is not whether defendant could put on a facade of friendliness and cooperation in the hospital setting in order to achieve his goal of unsupervised release, but whether he would have serious difficulty in controlling dangerous behavior once he had attained that goal and no longer had expert help or support to keep him on the straight and narrow." (*Williams*, *supra*, 242 Cal.App.4th at p. 875.)  The jury was entitled to conclude, despite evidence defendant could control his impulses under some conditions, that the other evidence demonstrated his impulse control was poor overall and would be even more so outside the hospital.

We conclude substantial evidence shows defendant had significant difficulty controlling his behavior.

### III

### *There Was No Due Process Violation*

Defendant's due process argument is inextricably linked to his insufficient evidence arguments.  At its core, defendant's argument is that there were no factual underpinnings to Dr. Deane's opinions that defendant was a substantial risk of harm and could not control his behaviors.  As demonstrated, however, Dr. Deane relied on specific

evidence pertaining to defendant's documented behavior.  Accordingly, because there was substantial evidence defendant posed a substantial danger of physical harm to others by reason of a mental disorder and that he has serious difficulty controlling his dangerous behavior, the order for extended commitment did not violate the due process clause of the Fourteenth Amendment.  (See *Foucha v. Louisiana* (1992) 504 U.S. 71, 86 [118 L.Ed.2d 437, 452].)

## DISPOSITION

The order extending defendant's commitment is affirmed.


/s/_____
Robie, Acting P. J.



We concur:



/s/_____
Earl, J.



/s/_____
Boulware Eurie, J.