Filed 4/22/22  P. v. Hernandez CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>RICARDO VELEZ HERNANDEZ,<br><br>    Defendant and Appellant. | B314675<br><br>(Los Angeles County<br>Super. Ct. No. ZM026698) |

APPEAL from an order of the Superior Court of Los Angeles County, Diego H. Edber, Judge.  Affirmed.

Gerald J. Miller, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Noah P. Hill and Eric J. Kohm, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Ricardo Hernandez appeals from an order committing him to a state hospital after the trial court found he was a sexually violent predator (SVP) under the Sexually Violent Predator Act (Welf. & Inst. Code,[1] § 6600 et seq.; SVPA or the Act).  The SVPA "allows the state to petition superior courts for the involuntary civil commitment of certain convicted sex offenders whose diagnosed mental disorders make them a significant danger to others and likely to reoffend after release from prison."  (*Walker v. Superior Court* (2021) 12 Cal.5th 177, 184, fn. omitted (*Walker*).)  An SVP shall be committed to the custody of the State Department of State Hospitals for an indeterminate term.  (§ 6604.)

Following a court trial, the trial court found that Hernandez was an SVP.  On appeal, Hernandez argues no substantial evidence supported the finding that he posed a *current* risk of offending.  We assume arguendo that Hernandez preserved this challenge even though he did not allow the prosecution's experts to interview him.  On its merits, Hernandez's challenge fails because substantial evidence supported the trial court's ruling.  All three experts, including the defense expert, agreed that Hernandez falls into a group of sexual offenders at high risk of recidivism.  Although defense witnesses testified that Hernandez reformed his behavior, the trial court could have credited conflicting evidence from prosecution experts that Hernandez still poses a risk of likely committing sexually predatory offenses.  We affirm.

---

[1] Undesignated statutory citations are to the Welfare and Institutions Code.

## SVPA STATUTORY FRAMEWORK

The purpose of the SVPA is to protect the public from SVPs and to provide the offenders with treatment for their mental disorders.  (*Walker*, *supra*, 12 Cal.5th at p. 184.)  "The SVPA authorizes the indefinite involuntary civil commitment of persons found to be SVP's after they conclude their prison terms." (*People v. Jackson* (2022) 75 Cal.App.5th 1, 7 (*Jackson*); § 6604.) The People may file a petition to request commitment only if two independent evaluators concur that the person meets the SVP criteria.  (*People v. Washington* (2021) 72 Cal.App.5th 453, 462.)

"In order to commit someone under the Act, the state must establish four conditions:  (1) the person has previously been convicted of at least one qualifying 'sexually violent offense' listed in section 6600, subdivision (b) (§ 6600, subd. (a)(1)); (2) the person has 'a diagnosed mental disorder that makes the person a danger to the health and safety of others' ([citation]); (3) the mental disorder makes it likely the person will engage in future acts of sexually violent criminal behavior if released from custody ([citation]); and (4) those acts will be predatory in nature ([citation])."  (*Walker*, *supra*, 12 Cal.5th at p. 190.)  At the trial on an SVPA commitment petition, the People must prove these criteria beyond a reasonable doubt.  (*Ibid*.)

The likely standard " ' " 'does not mean more likely than not; instead, the standard of likelihood is met "when 'the person presents a substantial danger, that is, a serious and well-founded risk, that he or she will commit such crimes if free in the community.' " ' [Citation.]" (*Jackson*, *supra*, 75 Cal.App.5th at p. 8.)  "[E]xpert testimony is critical" because "the primary issue is not, as in a criminal trial, whether the individual committed certain acts, but rather involves a prediction about the

3

individual's future behavior." (*People v. McKee* (2010) 47 Cal.4th 1172, 1192 (*McKee*).)

A sexually violent predator is defined as "a person who has been convicted of a sexually violent offense against one or more victims and who has a diagnosed mental disorder that makes the person a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior. (§ 6600, subd. (a)(1).) A trier of fact cannot find a person a sexually violent predator "based on prior offenses absent relevant evidence of a currently diagnosed mental disorder that makes the person a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior." (*Id.*, subd. (a)(3).) However, the statute "does not require proof of a recent overt act while the offender is in custody." (*Id.*, subd. (d).)

The SVPA also contains " 'provisions for the evaluations to be updated or replaced after the commitment petition is filed in order "to obtain up-to-date evaluations, in light of the fact that commitment under the SVPA is based on a 'current' mental disorder." ' [Citation.]" (*In re Butler* (2020) 55 Cal.App.5th 614, 628.) Specifically, "[a]fter commitment, an SVP is evaluated every year to consider 'whether the committed person currently meets the definition of a sexually violent predator and whether conditional release to a less restrictive alternative, pursuant to Section 6608, or an unconditional discharge, pursuant to Section 6605, is in the best interest of the person and conditions can be imposed that would adequately protect the community.' (§ 6604.9.) Under certain circumstances, an SVP may petition

4

the court for either conditional release (§ 6608) or unconditional discharge (§ 6605)."[2] (*Butler*, at pp. 628–629.)

## PROCEDURAL BACKGROUND

On May 28, 2015, the district attorney filed a petition seeking to commit Hernandez under the SVPA. The petition alleged that the Department of Corrections screened Hernandez and determined that he is likely to be a sexually violent predator. Subsequently two psychiatrists or psychologists evaluated Hernandez and determined he had a mental disorder and was likely to engage in acts of predatory sexual violence without appropriate treatment and custody.

On May 29, 2015, the trial court ordered a probable cause hearing to determine if probable cause exists to believe Hernandez was a sexually violent predator. On March 3, 2016, the trial court found probable cause that Hernandez was an SVP.

---

[2] The Supreme Court has described those circumstances as follows: "In short, under Proposition 83, an individual SVP's commitment term is indeterminate, rather than for a two-year term as in the previous version of the Act. An SVP can only be released conditionally or unconditionally if the [Department of Mental Health] authorizes a petition for release and the state does not oppose it or fails to prove beyond a reasonable doubt that the individual still meets the definition of an SVP, or if the individual, petitioning the court on his own, is able to bear the burden of proving by a preponderance of the evidence that he is no longer an SVP. In other words, the method of petitioning the court for release and proving fitness to be released, which under the former Act had been the way an SVP could cut short his two-year commitment, now becomes the only means of being released from an indefinite commitment . . . ." (*McKee, supra,* 47 Cal.4th at pp. 1187–1188.)

Hernandez waived a jury trial. The court trial commenced July 8, 2021. The parties stipulated to the admissibility of Dr. Harry Goldberg's report. Dr. Goldberg concluded, and it is undisputed that, Hernandez's 1992 conviction for lewd act with a child under age 14 constitutes a qualifying offense under the SVPA. The victim described the offense as follows: "The victim stated [Hernandez] came into her room and got in bed with her. He leaned over on the victim and kissed her in the mouth (pointing to her lips) and that the victim pushed away from [Hernandez], but he grabbed her arm and scratched her. [Hernandez] pulled the victim's panties down around her feet and began touching her butt. The victim stated that [Hernandez] rubbed on the outside of her vagina with his fingers. The victim stated that it hurt, so she screamed." Dr. Goldberg's report indicated the age was unknown; the parties appear to agree that the victim was five years old.

When Dr. Goldberg interviewed Hernandez, Hernandez did not recall anything and said that he had "blacked out."

According to Dr. Goldberg, Hernandez's other offenses demonstrated a pattern of behavior even though they were not qualifying offenses under section 6600, subdivision (b). Specifically, in 1992 Hernandez was convicted of burglary after he entered a 14-year-old girl's bedroom. The 14 year old stated that Hernandez "was coming after her, thinking she was his girlfriend."

In 2000, Hernandez was convicted of attempted rape. In his report, Goldberg described the circumstances as follows: Hernandez entered the bedroom of a 25-year-old woman. Hernandez grabbed her and forced her onto her back. "After straddling the victim's body, [Hernandez] removed her

underwear and forced the victim's legs apart.  He began to penetrate her vagina with his erect penis.  The victim continued to struggle and [Hernandez] rolled the victim onto her stomach; then attempted to insert his penis into her anus, using his hands to press against her buttocks."  Hernandez also asked the victim to orally copulate him.

Hernandez told Dr. Goldberg that he was on parole at the time of the attempted rape.  According to Hernandez, he was " 'strung out on drugs.' "  Hernandez did not recall the incident and said he "pled no contest because he would not hurt anyone in this manner."

Hernandez reported to Dr. Goldberg that at age six, a family friend sexually abused him.  At age six or seven, he began drinking alcohol.  At age nine, Hernandez began stealing and smoking marijuana.  At age 11, Hernandez started using cocaine.  At age 13, Hernandez joined a gang.  At age 12 or 13, Hernandez stole a car with friends.  At age 16 or 17, Hernandez started using weapons.  At age 22, Hernandez began using heroin.  Hernandez acknowledged using heroin while he was incarcerated but indicated he had stopped in 2010.

Hernandez told Dr. Goldberg that "using drugs or alcohol does not necessarily increase his sexual thoughts or feelings."  Hernandez denied being sexually attracted to children.  Hernandez admitted having sexual relations with prostitutes.

Hernandez did not believe he was capable of committing sexual misconduct.

Hernandez scored in the high range on a test Dr. Goldberg administered to diagnose antisocial characteristics.  Hernandez also scored in the moderate or moderate-high range on actuarial risk assessments to test a sexual offender's likelihood of

committing another sexual offense. Specifically, these tests "reveal the probability that a sexual offender will be detected for a new sexual crime. . . . [T]he probability that an offender will commit a new sexual offense is somewhat higher than the probability that he will be detected, arrested, prosecuted, and convicted of committing a new sexual crime." Dr. Goldberg reported that Hernandez never attended a sex offender treatment program.

Dr. Goldberg concluded that a "combination of Mr. Hernandez'[s] substance-related disorders and Antisocial Personality Disorder predispose him to commit criminal sexual acts."

Following a court trial, the court found Hernandez a sexually violent predator and issued an order of commitment. Hernandez timely appealed.

## FACTUAL BACKGROUND

At the time of the SVP trial, Hernandez, born in August 1971, was 49 years old. Hernandez had been incarcerated from 2000 until 2015 for the attempted rape and burglary. Since 2015, he resided at Coalinga State Hospital (Coalinga). Other than possessing unauthorized property, Hernandez was compliant with the rules of the Department of Corrections and Coalinga for 16 years.

According to Dr. Goldberg, while at Coalinga, Hernandez completed the first module of a sexual offender's treatment program (SOTP) but did not complete the remaining three modules. Prosecution witness Tricia Busby testified about the SOTP. Module one consisted of an introduction to treatment. Module two involved a participant reviewing his or her personal history and the factors leading to criminal conduct. Module two

8

also involved learning self-regulation and problem solving skills. As part of module three, a treatment review panel would interview the participant about risk factors and the insights the participant had developed through participating in the prior modules. In module three, participants would practice their new problem solving skills learned during module two. Prior to entering module four, a review panel would assess the participant.

Modules two and three constitutes the main parts of the treatment. Module four permits the conditional release of the participant to test the participant's ability to live in the community without recidivism.

According to Busby, the SOTP program offered treatment for antisocial personality disorder. SOTP was successful in reducing recidivism rates for those who complete it. The men convicted of rape group, another class offered at Coalinga, is not as in-depth or intensive as the SOTP program.

## 1. *Prosecution expert testimony*

### A. Dr. Harry Goldberg

Dr. Goldberg, whose report is described above, testified at trial. Dr. Goldberg is a clinical and forensic psychologist, who since 1995 had evaluated persons to determine if they are SVPs, and conducted over 1,000 such evaluations. In 2015, Dr. Goldberg interviewed Hernandez for about two hours in advance of the probable cause hearing. Hernandez refused Dr. Goldberg's requests in 2020 and 2021 for additional interviews.

At trial, Dr. Goldberg diagnosed Hernandez with antisocial personality disorder, alcohol use disorder, cannabis use disorder,

9

opioid disorder and stimulant use (cocaine) disorder. Dr. Goldberg testified that all of Hernandez's substance use disorders were in sustained remission in a controlled environment (prison and Coalinga). According to Dr. Goldberg, persons with antisocial personality disorder exhibit the following traits: impulsivity, aggressiveness, failure to conform to social norms, irresponsibility, and deceitfulness. Dr. Goldberg also testified that antisocial personality was a lifelong condition but may diminish as a person reaches the fourth decade of life.

Goldberg described Hernandez's qualifying offense (lewd act with a child) and the other convictions of a sexual nature (entering a 14-year-old's room and attempted rape of a 25-year-old woman). Hernandez admitted to Goldberg that Hernandez was not in control of himself during the 1992 lewd act with a child. At the time Hernandez committed this crime, he was on probation and his failure to reform his behavior, according to Goldberg, showed that "the threat of incarceration did not prevent him from acting upon his urges to have sexual contact with this victim." Dr. Goldberg recounted that Hernandez attempted to rape his last victim shortly after he had been released from prison. Hernandez admitted to Goldberg that almost immediately after his release, he started using controlled substances. Dr. Goldberg believed Hernandez's crimes demonstrated a pattern of sexual impulsivity. Goldberg described Hernandez as "sexually impulsive, sexually aggressive" after intoxication.

Dr. Goldberg administered two tests to assess Hernandez's likelihood of recidivism, and both assessments indicated that Hernandez had an above-average risk of recidivism in comparison to other sexual offenders. Based on one test,

Goldberg concluded that Hernandez was in a group with a 17.3 percent chance for sexual reoffense over a period of five years and a 27.3 percent chance over a 10-year-period. Another test placed Hernandez in a group with 19.1 chance for sexual re-offense within a five-year-period. On the structured risk assessment forensic guide, Hernandez scored in the high risk group. That latter test measures "psychological vulnerabilities . . . ."

Dr. Goldberg considered protective factors against recidivism and concluded that the only factor diminishing Hernandez's risk of recidivism was Hernandez's age. In contrast, Hernandez committed crimes while on parole and he did not complete the SOTP program. Additionally, Hernandez had no medical issues preventing him from committing a similar offense.

Dr. Goldberg acknowledged that Hernandez took other classes, including a class for men convicted of rape and one on behavioral change, and participated in substance abuse groups. According to Dr. Goldberg, the groups in which Hernandez participated were not targeted to reducing sexual recidivism. Dr. Goldberg testified that without participating in the SOTP program, Hernandez was unable to show he changed the "dynamics" that led to his prior criminal activity. Dr. Goldberg testified: "I think he is being manipulative in this regard. He's taking the classes, the didactic classes but not doing the real work. It's like sitting in an AA meeting and not participating. You know, it's not doing the real work that has been shown to reduce recidivism."

Dr. Goldberg opined that Hernandez posed a likely risk of predatory conduct "based on the fact that all prior sexual offenses were predatory. These were strangers or people he barely knew." Goldberg also testified that every time Hernandez was released

11

into the community he returned to using controlled substances. For example, when on parole, Hernandez sold food stamps for drugs and met with his parole officer while stoned.

Dr. Goldberg testified the fact that Hernandez has committed several sexual offenses sets him apart from other sexual offenders. A published article indicated that "[o]nly seven to eight percent of child molesters and rapists were detected and rearrested for sexual crimes . . . ." Dr. Goldberg testified that Hernandez reported he did not remember his crimes but Goldberg was suspicious of Hernandez's inability to recall.

Dr. Goldberg opined that Hernandez satisfied the criteria for a sexually violent predator and if Hernandez were released into the community, he would be likely to engage in sexually violent predatory criminal behavior. Goldberg testified that Hernandez never acknowledged his sexual offenses, but instead "said he's not capable of" committing those offenses.

Dr. Goldberg answered affirmatively when asked if Hernandez has a current diagnosis of antisocial personality disorder. Dr. Goldberg did not know if antisocial personality disorder is ever completely cured. Dr. Goldberg also testified that Hernandez had current addictions because remission could not be evaluated in a controlled environment, as an inmate may not have access to addictive substances. Dr. Goldberg also testified that he reviewed Hernandez's psychiatric evaluation, prepared by a nurse practitioner and dated March 29, 2021. The psychiatric evaluator seconded Dr. Goldberg's antisocial personality disorder diagnoses. Dr. Goldberg additionally testified that the same evaluator concluded that Hernandez's antisocial personality disorder was current.

Although Dr. Goldberg acknowledged that Hernandez improved since he was at Coalinga, Hernandez's improvement did not change Dr. Goldberg's overall opinion concerning the likelihood Hernandez would reoffend.

### B.    Dr. Bruce Yanofsky

Clinical psychologist Dr. Bruce Yanofsky testified as a prosecution expert as well.  Since 2003, Dr. Yanofsky conducted SVP evaluations.  Yanofsky evaluated Hernandez in July 2020. As part of that evaluation, Dr. Yanofsky requested to interview Hernandez. Hernandez refused.  Hernandez refused a second request for an interview in May 2021.

Yanofsky diagnosed Hernandez with unspecified paraphilic disorder (defined as sexual deviancy), and antisocial personality disorder.  Dr. Yanofsky also diagnosed Hernandez with the same substance use disorders identified by Dr. Goldberg.  Dr. Yanofsky based the paraphilic disorder, which Dr. Yanofsky described as a provisional diagnosis, on Hernandez's sexual criminal history including acts with a child under five (underlying the 1992 lewd act on a child conviction) and an attempted rape of an adult woman (underlying the attempted rape conviction).  "The objects and the desires and what is apparently expressed in his behaviors is deviant, but it's hard for me at least at this point in time in the absence of an interview and other diagnostic tools to specifically understand is this attraction to force?  Is it attraction to non-consent?  Could it be attraction to minors?"  Dr. Yanofsky felt "quite confident that there is a paraphilic diagnosis" but was "not exactly sure of the specific nature of it."

Dr. Yanofsky based his conclusion that Hernandez suffered from antisocial personality disorder on Hernandez's behavior problems, gang membership, criminal conduct, failure to learn

13

from incarceration, and lack of empathy towards his victims. Dr. Yanofsky noted that Hernandez continued to use alcohol even though Hernandez knew he had engaged in criminal conduct when intoxicated or highly intoxicated. Dr. Yanofsky opined that the unspecified paraphilic disorder and the antisocial personality disorder "led" to Hernandez's sexual offenses.

Like Dr. Goldberg, Dr. Yanofsky testified that "it is vastly easier to maintain sobriety when the substance is not readily available as opposed to when people are free in the community." Dr. Yanofsky also testified that a person's behavior in an institutional setting may not be indicative of that person's behavior in the community. Although he acknowledged Hernandez had not committed a crime since 2000, Dr. Yanofsky also noted Hernandez was not living in the community since 2000 because Hernandez either was incarcerated or a patient at Coalinga.

According to Dr. Yanofsky, Hernandez's sexual recidivism set him apart from other offenders who commit sex crimes because most offenders do not repeat sexual offenses. Based on actuarial tests, Dr. Yanofsky scored Hernandez in a group of persons who have a 14.5 to 20.5 percent chance of reoffending within five years. Within 10 years, the likelihood rose to between 22.5 and 32.6 percent. Dr. Yanofsky opined that Hernandez "currently poses a serious and well founded risk of engaging in predatory sexually violent behavior if he were to be released in the community." Dr. Yanofsky concluded that Hernandez had no protective factors reducing that risk.

Dr. Yanofsky also discussed Hernandez's refusal to participate in the SOTP program despite monthly opportunities to do so. SOTP was the program most likely to change

14

Dr. Yanofsky's evaluation from positive to negative. Hernandez's participation in various other classes did not alter Dr. Yanofsky's opinion. "By virtue of just sitting in Coalinga and not getting in trouble, [Hernandez] does not address all the different aspects and complexities associated with . . . releasing a repeat sex offender back into the community."

## 2. *Defense expert testimony*

Dr. Craig King, a psychologist, testified for Hernandez. Dr. King spoke to Hernandez for about two hours before completing his assessment.

Dr. King diagnosed Hernandez with antisocial personality disorder as well as the same four substance use disorders identified by Drs. Goldberg and Yanofsky. Dr. King testified that "the antisocial traits and behaviors have certainly gone into some degree of remission." According to Dr. King, Hernandez's antisocial personality disorder was not "salient" as it previously had been. According to Dr. King, Hernandez received treatment and has "grown up in his thinking and his behavior, and he hasn't acted out in an antisocial manner in years." Dr. King acknowledged there was no way to diagnose the antisocial personality disorder "as in remission according to [the] DSM."[3] But, Dr. King concluded that "there's a lack of data upon which to conclude that his antisocial personality disorder currently impairs his emotional volitional capacity and then predisposes him to engage in sexual violence." "While he might have some predisposition to commit sexual offenses, he falls below the

---

[3] The Diagnostic and Statistical Manual of Mental Disorders (DSM) is a book classifying mental disorders and is commonly used by mental health professionals.

15

likelihood for a serious and well founded risk for engaging in sexual violent predatory criminal behavior."

Dr. King did not diagnose paraphilia because Hernandez did not exhibit "a pattern of sexual offending that . . . would suggest he has proclivity or sexual preference for forcing sex on others." The lack of pattern between offending against a five year old (underlying the 1992 conviction for lewd act on a child) and then an adult woman (underlying the 2000 attempted rape conviction) "indicates that it's not a paraphilic disorder."

Dr. King further opined that Hernandez's substance abuse disorders were in remission because Hernandez had not used alcohol or controlled substances since 2008. Dr. King found it irrelevant that a person was in custody or on the street because persons in custody have access to drugs and alcohol. Dr. King, however, acknowledged that the DSM-V manual [the fifth edition of the DSM] allowed a clinician to consider whether a patient's remission occurred only in a controlled environment.

Dr. King stated Hernandez's failure to complete the SOTP program "does not work towards his benefit," but emphasized that Hernandez participated in other therapeutic groups. Specifically, Hernandez participated in a group called "men convicted of rape." Based on reviewing reports, considering Hernandez's entire history, and speaking to the staff at Coalinga, Dr. King believed Hernandez had benefitted from treatment.

Dr. King acknowledged that Hernandez was in the above average risk category of offenders on actuarial tests. Hernandez "falls into [a category] of offenders who are in the above average risk range." Dr. King acknowledged that Hernandez believes he does not have a problem of committing sex offenses. Hernandez said "he doesn't have much recollection for what he did based on

his drug and alcohol use." Hernandez indicated that he would not participate in a sex offender treatment if he were released unless it were required. Dr. King agreed that most individuals who commit a sex offense do not commit a second sex offense. Dr. King acknowledged that Hernandez has consistently relapsed, but did not specify whether he was referring to alcohol, controlled substances, or sex offenses.

Dr. King also testified that Hernandez had engaged in prostitution and in trading drugs for sex. Dr. King also acknowledged that Hernandez "has remained untreated for sexual offending" and that was a "vulnerability." Dr. King conceded that Hernandez was "rationalizing or minimizing" when he expressed his ongoing belief that his sexual offending was the result of drugs and alcohol.

### 3. *Defense witnesses who knew Hernandez*

Autumn Bayliss, a supervising rehabilitation therapist at Coalinga State Hospital, testified that Hernandez participated in several groups at Coalinga including one exploring spirituality. The exploring spirituality group was not part of the SOTP. Hernandez also took a class entitled "becoming a better you" and one for learning vocational leather skills. Bayliss described Hernandez as pleasant, respectful, attentive, and compliant. She did not discuss Hernandez's sex offense history with him because she "preferred to leave that to the sex offender treatment providers."

Behavior specialist Brenda Brooks testified she taught substance abuse classes at Coalinga, and Hernandez took several classes targeted for substance abusers. According to Brooks, Hernandez was a good student and respectful. The substance abuse program was not part of the SOTP. Brooks did not discuss

Hernandez's sexual offenses with him. According to Brooks, although alcohol and drugs were available in the hospital, Hernandez did not use them.

In 2015, behavior specialist Scott Everly met Hernandez in a group called "self discovery leading to empathy." Hernandez completed the group. The group was an adjunct to the SOTP. The goal of the self discovery group was for participants to gain an understanding of how other people feel. Hernandez also participated in a group exploring boundaries and enrolled in a group for men convicted of rape. Everly did not recall Hernandez telling him about his sexual offending or that he was sorry for the trauma he inflicted on his victims. According to Everly, the SOTP is more intensive than the other groups.

Chariti Messer worked as a behavior specialist at Coalinga. Hernandez enrolled in a boundaries group facilitated by Messer. Some of the people in the boundaries group were participating in the SOTP. Hernandez took the class twice in order to ensure he learned all of the concepts in that class. Messer never observed Hernandez under the influence of alcohol. Messer stated that the boundaries group is not intended to be a substitute for the SOTP.

Behavior specialist Eliseo Garcia testified on behalf of Hernandez as well. Hernandez participated in Garcia's "values in action" group. Individuals who participate in SOTP also typically take the "values in action" group. Hernandez also participated in substance abuse and men convicted of rape groups facilitated by Garcia. The goal of the substance abuse group was to prevent future relapses into substance abuse. The SOTP program "is a lot more specific and relates more to hurting others." The SOTP program offers different classes that are more intensive.

18

When Hernandez discussed his sexual offenses with Garcia, he told Garcia he did not remember them. Garcia testified that Hernandez's treatment plan stated: " 'Mr. Hernandez still holds adamantly to the belief that had he not been extremely intoxicated and in a blackout state, he would not have committed his crimes.' "

Orlando Cruz, an art therapist at Coalinga, testified Hernandez participated in a group led by Cruz entitled "[b]ecoming a better you, healing the broken spirit" and designed for people who had suffered childhood trauma.

### 4.    *Hernandez's testimony*

Hernandez testified on his behalf. Hernandez recalled driving while drunk. He did not remember if that was his first contact with law enforcement because he had regularly used drugs and alcohol. Hernandez started sipping alcohol sometime between age six and age eight. In his early teens, Hernandez started to attend parties, drink, and meet gang members. At age nine or 10, he started smoking marijuana. Hernandez experimented with PCP, acid, and other pills.

Hernandez did not recall in 1990 being convicted of petty theft. He recalled in 1992 being convicted of second degree burglary and being placed on probation. Hernandez pleaded guilty because he "didn't know what took place . . . so [he] couldn't defend [himself], and [he] couldn't deny it."

In 1992, Hernandez was arrested for lewd act on a child. Hernandez remembered "drinking and partying" with the victim's father. He did not recall anything else. On that day, Hernandez had been drinking, smoking marijuana, and using cocaine. The victim's father invited Hernandez because he knew Hernandez had drugs. Hernandez recalled "getting high all the

19

way until [he] lost consciousness." Hernandez regained consciousness the next morning when the victim's father said he would take Hernandez home. Hernandez did not recall going into the five-year old's bed and touching her. Hernandez testified, "I feel bad for creating a victim, you know, for her. I was not in my right mind. It really makes me feel bad."

Hernandez was incarcerated from 1992 through 1994. When he was released on parole, he absconded from parole. He did not want his parole officer to see the "track marks" from his intravenous use of heroin. Hernandez went to Mexico where he entered a substance abuse program and, according to him, remained sober for almost two years. Yet, in addition to testifying he was sober for almost two years, Hernandez also testified that from 1993 to 2008, he used heroin whenever he "could get [his] hands on it."

Hernandez had been released from prison for four days before he was arrested for attempted rape and burglary. At that time his "preoccupation was just getting high and staying high." Hernandez testified that he did not recall the attempted rape.

Hernandez testified that in 1999, he decided to change. He earned a GED and he worked for 12 years while incarcerated. He learned to drive trucks and learned about computers. He became a certified mechanic. While incarcerated he taught English as a second language. He also tutored inmates to assist them in obtaining a GED. Additionally, Hernandez worked in the kitchen washing dishes.

Hernandez used alcohol until 2008. In 2002, he knew he needed to change so he took a class to help understand why he became an addict. He took other classes to help him understand and improve himself. He completed an anger management

20

group.  He completed a group on how to live a healthy life and another on how to develop positive relationships.  He also enrolled in a group entitled "men convicted of rape."  At Coalinga, he worked as a janitor.

Hernandez testified that at Coalinga, he was learning "why I committed the crimes I did . . . ."  He testified he felt remorse and regret.  He testified he never intended to cause anyone harm.  He reiterated that he did not recall the crimes.  Hernandez testified, "I wasn't in my right mind when I committed those crimes . . . ."

In June 2016, Hernandez completed the first SOTP module.  His treatment team recommended he continue with module two.  He did not continue based on the advice of his lawyer.  Hernandez did not think he had a preoccupation with children or women and for that reason did not fit into the SOTP program.  Also, Hernandez thought the SOTP did not apply to him because he "wasn't aware of what [he] was doing" when he committed his crimes.  Hernandez acknowledged his treatment team "always recommend[ed]" he participate in SOTP.  Hernandez testified he "chose another course [or] plan [of] action . . . ."

## DISCUSSION

Hernandez's sole argument on appeal is that the evidence was insufficient to support a finding that he "currently met the criteria for commitment as an SVP."  (Boldface & capitalization omitted.)  According to Hernandez, "the evidence adduced at trial failed to establish beyond a reasonable doubt that appellant currently suffered from a severe mental disorder that predisposed him to commit sexually violent offenses, or that, as a result of such disorder, appellant was dangerous or likely to engage in sexually violent criminal behavior, as required for commitment

21

as an SVP." Hernandez claims that the People's experts improperly relied only on his past offenses and past psychological history and ignored his rehabilitation.

As defendant emphasizes, the SVPA permits civil commitment based on a finding of current mental condition. (*People v. Hubbart* (2001) 88 Cal.App.4th 1202, 1219.) Our high court explained: "In the case of the SVP Act . . . , although the trigger for eligibility is a certain type of past criminal conduct, the commitment cannot be effectuated without a determination of a current mental disorder and future dangerousness. (*McKee*, *supra*, 47 Cal.4th at p. 1195, fn. 7.)

"In reviewing the sufficiency of the evidence to support a person's civil commitment as an SVP, we apply the substantial evidence standard of review. [Citation.] 'Under this standard, the court "must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find [Hernandez] guilty beyond a reasonable doubt." [Citations.] The focus of the substantial evidence test is on the whole record of evidence presented to the trier of fact, rather than on " 'isolated bits of evidence.' " ' [Citation.] [¶] We 'must presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.' [Citation.] 'We must therefore view the evidence in the light most favorable to the prevailing party, giving it the benefit of every reasonable inference and resolving all conflicts in its favor . . . .' [Citation.]" (*People v. Poulsom* (2013) 213 Cal.App.4th 501, 518 (*Poulsom*).)

"Further, '[a]lthough we must ensure the evidence is reasonable, credible, and of solid value, nonetheless it is the

22

exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts on which that determination depends. [Citation.] Thus, if the verdict is supported by substantial evidence, we must accord due deference to the trier of fact and not substitute our evaluation of a witness's credibility for that of the fact finder.' [Citation.]" (*Poulsom*, *supra*, 213 Cal.App.4th at p. 518.)

## A.    Hernandez Forfeited His Argument

Hernandez refused to allow the People's experts to interview him before his SVP trial. This failure would be sufficient ground to defeat his substantial evidence challenge. As the Third District explained in *People v. Sumahit* (2005) 128 Cal.App.4th 347, 353–354 (*Sumahit*): "The law has a strong interest in seeing to it that litigants do not manipulate the system, especially where to hold otherwise would permit them to ' "trifle with the courts." ' [Citation.] Here, defendant fully cooperated with his own psychologist, while denying the People's doctors the opportunity to interview him . . . . A sex offender cannot deny the state access to the workings of his mind and then claim a lack of proof that he has a 'current' psychological disorder. Because he refused to be interviewed by the state's experts, who could have formed an opinion as to his present dangerousness, defendant has forfeited the claim that the state did not prove that he was currently dangerous."

As in *Sumahit*, Hernandez refused to be interviewed by the prosecution's experts but submitted to being interviewed by his own expert. Specifically, Hernandez refused Dr. Goldberg's 2021 request for an interview and refused both of Dr. Yanofsky's interview requests but agreed to be interviewed by his expert, Dr. King. His refusals preclude him from arguing that the

23

People's experts failed to present proof of a current psychological disorder.

## B. Substantial Evidence Supported the Commitment Order

Assuming Hernandez has not forfeited his substantial evidence challenge, there was substantial evidence at trial that Hernandez currently suffers from a severe mental disorder predisposing him to commit sexually violent offenses. When asked if the antisocial personality diagnosis was current, Dr. Goldberg answered affirmatively. Dr. Yanofsky testified Hernandez suffered both from antisocial personality disorder and an unspecific paraphilic disorder. Dr. Yanofsky acknowledged that Hernandez had not committed any criminal conduct since 2000, but that this fact did not alter Yanofsky's diagnosis because Hernandez had been incarcerated or institutionalized since 2000. Dr. Yanofsky opined Hernandez "*currently* poses a serious and well founded risk of engaging in predatory sexually violent behavior if he were to be released in the community." (Italics omitted.) Although Dr. King testified that Hernandez did not suffer from a paraphilic disorder and Hernandez's antisocial personality disorder was in "some degree of remission," the trial court did not have to credit Dr. King's testimony. This is all the more apparent given all three experts, including Dr. King, agreed that actuarial risks assessment tests showed that Hernandez had an above average likelihood of recidivism in comparison to other sexual offenders.

The experts considered Hernandez's rehabilitation efforts, including his failure to participate in the SOTP, the one program designed to prevent sexual offense recidivism. Module four of the SOTP would have allowed Hernandez an opportunity to

24

demonstrate his rehabilitation with a temporary release into the community. Staff at Coalinga repeatedly encouraged Hernandez to continue with the SOTP, but he never did. Although Hernandez chose to enroll in other groups and although he was respectful of his teachers and learned to control his substance abuse in a controlled environment, Dr. Goldberg opined: Hernandez was "being manipulative in this regard. He's taking the classes, the didactic classes but not doing the real work. It's like sitting in an AA meeting and not participating. You know, it's not doing the real work that has been shown to reduce recidivism."

The undisputed evidence that Hernandez completed only the first module of the SOTP supported the conclusion that he posed a current risk of sexual offense. As the Attorney General points out, it is "reasonable to consider" Hernandez's refusal to participate in SOTP which provides for a period of supervised release in the community "as a sign" that he "is not prepared to control his untreated dangerousness by voluntary means if released unconditionally to the community." (*People v. Superior Court* (*Ghilotti*) (2002) 27 Cal.4th 888, 929.) Hernandez's antisocial personality disorder and repeated refusal to complete sexual offender treatment would be sufficient to support the trial court's order even apart from the other evidence before the trial court. (*Sumahit*, *supra*, 128 Cal.App.4th at p. 354 ["[O]ne of the key factors which must be weighed by the evaluators in determining whether a sexual offender should be kept in medical confinement is 'the person's progress, if any, in any mandatory SVPA treatment program he or she has already undergone; [and] the person's expressed intent, if any, to seek out *and submit to any necessary treatment . . . .*' [Citation.]"].)

Additionally, the uncontroverted evidence showed that despite taking numerous classes and refraining from using alcohol and controlled substances over a substantial time period while incarcerated or housed at Coalinga, Hernandez had developed no insight into the processes motivating his criminal sexual conduct.  Dr. Goldberg was suspicious of Hernandez's reports that he did not remember his crimes.  Dr. Goldberg emphasized that Hernandez never acknowledged his crimes, but instead said he was not "capable of" committing those crimes.  Dr. Yanofsky's testified that avoiding offenses at Coalinga does not translate into refraining from committing sexually violent offenses if released into the community.  Even Dr. King acknowledged that Hernandez "believes he does not have a problem with committing sexual offenses."  Hernandez told Dr. Goldberg that "using drugs or alcohol does not necessarily increase his sexual thoughts or feelings," suggesting that he harbored those feelings irrespective of his drug and alcohol use.

Finally, Hernandez inaccurately argues that there was "uncontroverted evidence regarding appellant's recent exemplary behavior and rehabilitation, which demonstrated that appellant had controlled his mental illness and was unlikely to sexually reoffend."  Hernandez cites evidence that he improved his behavior[4] but no evidence that he was rehabilitated.  The

_____

[4] For example, Dr. Goldberg testified "[t]o some extent" Hernandez indicated "empathy and compassion for the victims." Dr. Goldberg also testified that "[f]or the most part," Hernandez "conformed to social norms since he's been in the hospital" which is "a very controlled environment."  Similarly, Dr. Yanofsky testified that within Coalinga Hernandez exhibited "volitional control" but the question was whether he could "maintain [such control] in the community."  Dr. Yanofsky acknowledged that

evidence, as described above, shows he was not. Hernandez did not participate in the sexual offender treatment offered to him, failed to develop insight into his offenses, and according to his own expert was "rationalizing or minimizing" when he expressed his ongoing belief that his sexual offending was the result of drugs and alcohol.

## DISPOSITION

The order of commitment is affirmed.
NOT TO BE PUBLISHED.


BENDIX, J.


We concur:


ROTHSCHILD, P. J.


CHANEY, J.

---

Hernandez never committed a sexually violent offense while at Coalinga. Dr. Yanofsky also acknowledged that Hernandez was never caught with child pornography while at Coalinga. Dr. Yanofsky further acknowledged that Hernandez was employed as a janitor while at Coalinga. As Hernandez points out, he and other lay witnesses testified as to his coursework, behavioral improvements, and respect for staff at Coalinga.

27