Filed 1/9/24  P. v. Juarez CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| THE PEOPLE, | C097983 |
| Plaintiff and Respondent, | (Super. Ct. No. STK-CR-SB384-2022-0005197) |
| v. | |
| ARCHIE WILLIAM JUAREZ, | |
| Defendant and Appellant. | |

On June 16, 1998, defendant pleaded guilty to committing lewd and lascivious acts upon a child (Pen. Code,[1] § 288, subd. (a)) and unlawful intercourse with a child three years younger (§ 261.5, subd. (c)) with a section 1203.066, subdivision (a)(8) enhancement.  On August 5, 1998, the trial court sentenced defendant to an aggregate prison term of three years eight months suspended and placed him on eight years' formal probation, including the condition that he serve 360 days in county jail.

The record shows that following his release from jail, defendant registered as a sex offender pursuant to section 290 as required.  It also appears that defendant successfully

---

[1]     Further undesignated statutory references are to the Penal Code.

1

completed probation, including completion of a sex offender treatment program.  After registering for 22 years, defendant petitioned for release from his duty to register as a sex offender pursuant to section 290.5.  Thereafter, on December 19, 2022, the trial court denied defendant's petition, determining community safety would be enhanced by his continuing to register.

Defendant appeals arguing insufficient evidence supports the trial court's determination.  We agree that the People failed to present reasonable, credible, and solid evidence establishing a current risk of reoffense, and without that evidence, the trial court abused its discretion in determining that community safety would be "significantly enhanced" by continued registration.  Accordingly, we must reverse.

## BACKGROUND

Following several petitions that were denied for procedural defects, on July 25, 2022, defendant filed his fourth petition for relief from registration averring he was a tier-two registrant who had registered at least 20 years.  The People opposed this petition, asserting community safety would be significantly enhanced by defendant's continued registration.  Included with the People's opposition was a memorandum of points and authorities with supporting investigative reports illuminating the nature of defendant's offenses and other factors to be considered by the trial court in making its determination.

According to those documents, defendant met D.M. in 1986 and began a sexual relationship resulting in a son.  Defendant later moved to Kansas to be with another woman, but was present when the baby he fathered with D.M. was born.  D.M.'s daughter K.M. was approximately 6 years old when the couple met.

In August 1990, R.S. (who was 13 years old) began having sexual contact with defendant.  She initially lied about her age, stating she was 16 years old, but defendant knew her true age before R.S. and defendant had sexual intercourse, and R.S. became pregnant.  This occurred prior to her 14th birthday party, which defendant attended as he was living with her at the time.  R.S. and defendant fought over defendant visiting his son

2

at D.M.'s home, and eventually, defendant moved back in with D.M. R.S. did not see defendant during most of her pregnancy, but did see him shortly after their child was born. After the baby's birth, defendant saw the child only when R.S. took the baby to D.M.'s home.

In 1993, defendant pursued K.M. (then age 13) and impregnated her resulting in their first child. The couple attempted to keep the ongoing contact secret from D.M. On New Year's Eve 1993, K.M. and her mother D.M. took K.M.'s child to the emergency room. Defendant took advantage of their absence to have sex with R.S. (then 17 years old), resulting in a second pregnancy and child for R.S. fathered by defendant. Defendant continued his sexual acts with K.M. resulting in two more children who were conceived when K.M. was 14 (1994) and 16 years old (1996), respectively. Defendant was 26 and 28 years old when he conceived these children with K.M.

Defendant maintained contact with K.M., and by September 1997, law enforcement had responded, over a two-year period, to five reports of domestic violence between K.M. and defendant. Both parties were identified as the "suspect" at different times.

Defendant reported he loved D.M. and told D.M. that the children with K.M. were a mistake. Defendant told both D.M. and the probation officer interviewing him for his presentence report that he had sex with then 13-year-old K.M. only because she threatened to report him as a child molester if he did not.

In 1998, defendant married K.M. prior to pleading guilty to sexually abusing her. It does not appear that defendant ever addressed his sexual abuse of R.S. resulting in two children with either the probation officer or the trial court.[2]

_____

[2]     According to the People's pretrial brief, the sexual abuse of R.S. was uncharged conduct to be admitted under Evidence Code section 1108.

The trial court ultimately sentenced defendant to an aggregate prison term of three years eight months suspended and placed him on eight years' formal probation, including that he serve 360 days in county jail. It appears defendant was released early from jail for good behavior and thereafter registered for some 22 years. Defendant completed probation without any violations, and a total of five years of "sex treatment classes." Defendant maintained that he was ordered to complete three years of classes and completed an extra two years because he found the classes beneficial.

On December 19, 2022, a hearing was held on defendant's petition. The trial court, aware that it was the prosecution's burden, and with the consent of the People, heard first from defendant and his counsel. Counsel for defendant argued that defendant had been a law-abiding citizen for 22 years, defendant had overcome a problem with alcohol, participated with a charity motorcycle group, and this was the type of case the statute intended for relief. Defendant was sworn, echoed counsel, and added that he wanted to go to college and get a credential like his counselor friend who helped defendant with his mistakes. Defendant acknowledged those mistakes and expressed his goal to prevent others from making similar mistakes.

In response, the People conceded defendant met the statutory requirements to petition for release from the registration requirement. Nonetheless, the People argued against the relief sought in the petition because "community safety would be significantly enhanced due to the nature of the offenses, the age of the victims." As to the age of the victims, the People pointed out that while the victims were not under the age of 10 years old, defendant had fathered children with two 13-year-old girls, ultimately fathering five children between them when the victims were still minors. And at the same time, defendant maintained a relationship with the mother of one of the young girls. The People argued the preceding facts countered defendant's argument that he was a good father and had a long relationship with his wife (a victim in the case).

4

In asking the court to deny the petition, the People emphasized the egregiousness of defendant's conduct and that defendant had just met the statutory requirement of 20 years' registration. Conceding ultimately that defendant appeared to be a good father, the People stated specifically that their position was based on the egregiousness of the conduct (years of sexual abuse resulting in pregnancies with two girls who were 13 years old at the time the abuse began). The People also highlighted they had received information that one of the victims opposed defendant's petition. When the court inquired during argument, both defense counsel and the People confirmed that neither sought a Static-99 report.

Ultimately, the trial court denied defendant's petition. In making this determination, the court relied on the egregiousness of defendant's conduct. Specifically, that he had repeatedly abused two minors over a number of years resulting in five children. The court further relied on the opposition from one of the victims against defendant's petition. In determining that community safety would be enhanced by requiring continued registration, the court noted that the victim's opposition was important to the court. The court opined, without explanation, that the facts of the case and age of the victims go to the issue of community safety. When denying the petition, the court was mindful the victims were not strangers. The court ruled defendant could reapply in one year, and the court encouraged the submission of a Static-99 report. Defendant timely appealed.

## DISCUSSION

### *Legal Background*

In 2017, effective 2021, the Legislature changed the registration requirements for sex offenders who are required to register from lifetime registration to a tiered system. This legislation also changed the petition process for relief from registration found in section 290.5. (Legis. Counsel's Dig., Sen. Bill No. 384 (2017-2018 Reg. Sess.) ch. 541.)

As noted in the legislative history, the purpose of the change was to improve public safety by removing from the rolls of registrants those who currently posed little risk of reoffending. By removing low-risk registrants, law enforcement would be better able to monitor high-risk offenders. (Sen. Rules Com., Office of Sen. Floor Analyses, Sen. Bill No. 384 (2017-2018 Reg. Sess.) Sept. 15, 2017, pp. 7-8.) We find the legislative history relevant here in light of defense counsel's argument that defendant's case is the type the statute intended for relief.

Prior to January 1, 2021, a conviction under section 288, subdivision (a) required lifetime registration as a sex offender. (Former § 290, subds. (b) & (c)(1).) Section 290 now requires tier-two sex offenders convicted under section 288, subdivision (a) to register as a sex offender (§ 290, subds. (b) & (c)(1)) for 20 years after release from incarceration (§ 290, subd. (d)(2)(A)). As of July 1, 2021, section 290.5 allows a tier-two sex offender to petition for termination from the sex offender registry following the expiration of the minimum registration period, and any statutory extensions, under section 290, subdivisions (b) and (c)(1). (§ 290.5, subd. (a)(1).) The People may oppose a defendant's petition and request a hearing "if community safety would be significantly enhanced by the person's continued registration." (§ 290.5, subd. (a)(2).)

Because the statute does not identify the standard of proof for the community safety inquiry (§ 290.5, subd. (a)(3)), the People bear the burden of proving, by a preponderance of the evidence, that community safety would be significantly enhanced by requiring continued sex offender registration. (Evid. Code, § 115; *People v. Superior Court* (*Kaulick*) (2013) 215 Cal.App.4th 1279, 1301, 1305; *People v. Flores* (2014) 227 Cal.App.4th 1070, 1075-1076.) This burden requires the People prove through reliable, material, and relevant evidence, that there is a current risk of reoffense without registration.

"In determining whether to order continued registration, the court shall consider: the nature and facts of the registerable offense; the age and number of victims; whether

6

any victim was a stranger at the time of the offense (known to the offender for less than 24 hours); criminal and relevant noncriminal behavior before and after conviction for the registerable offense; the time period during which the person has not reoffended; successful completion, if any, of a Sex Offender Management Board-certified sex offender treatment program; and the person's current risk of sexual or violent reoffense, including the person's risk levels on SARATSO static, dynamic, and violence risk assessment instruments, if available." (§ 290.5, subd. (a)(3).) "Any judicial determination made pursuant to this section may be heard and determined upon declarations, affidavits, police reports, or any other evidence submitted by the parties which is reliable, material, and relevant." (*Ibid.*)

"An appellate court reviews the trial court's ruling on a petition for termination from the sex offender registry for abuse of discretion." (*People v. Thai* (2023) 90 Cal.App.5th 427, 433 (*Thai*).) "To establish an abuse of discretion, a defendant must demonstrate the trial court's decision fell outside the bounds of reason, i.e., was arbitrary, capricious, or patently absurd. (*People v. Johnson* (2022) 12 Cal.5th 544, 605-606 . . . [debatable ruling is not an abuse of discretion].)" (*Thai*, at p. 433.) " 'The abuse of discretion standard is not a unified standard; the deference it calls for varies according to the aspect of a trial court's ruling under review. The trial court's findings of fact are reviewed for substantial evidence, its conclusions of law are reviewed de novo, and its application of the law to the facts is reversible only if arbitrary and capricious.' (*Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711-712 . . . fns. omitted.)" (*Thai*, at p. 433.)

A trial court abuses its discretion when factual findings are not supported by substantial evidence or the decision is based on an incorrect legal standard. (*People v. Knoller* (2007) 41 Cal.4th 139, 156.) When looking for substantial evidence, we " 'view the evidence in the light most favorable to the People and must presume in support of the judgment the existence of every fact the trier could reasonably deduce from the

7

evidence.' [Citation.] [¶] 'Although we must ensure the evidence is reasonable, credible, and of solid value, nonetheless it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts on which that determination depends.' " (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206.) " 'In reviewing the record to determine the sufficiency of the evidence [we] may not redetermine the credibility of witnesses, nor reweigh any of the evidence, and must draw all reasonable inferences, and resolve all conflicts, in favor of the judgment.' " (*People v. Sumahit* (2005) 128 Cal.App.4th 347, 352.)

*Analysis*

Applying these principles to the facts of this case, we agree with defendant's argument that the trial court abused its discretion in denying his petition because there was not substantial evidence that he was a current risk such that community safety would be significantly enhanced by continued registration. Defendant relies heavily on the only published case (*Thai*) to have yet considered such a challenge.[3]

In *Thai*, the defendant pleaded guilty of violating section 288, subdivision (a) after he masturbated a 12-year-old boy who was not a stranger. More than 23 years later, the defendant filed a section 290.5 petition and provided evidence that he had participated in counseling and had no criminal history since the crime. The prosecution opposed the petition, arguing the facts of the underlying crime were " 'particularly egregious,' " with the defendant taking advantage of the 12-year-old victim and (despite defendant's guilty plea) showing no remorse after the crime. The defendant responded that there was no evidence that he was currently a danger, meaning the prosecution had failed to meet its burden of proof. The trial court denied the petition, reasoning the crime was egregious

---

[3]      We note the hearing on the section 290.5 petition was held well before the decision in *Thai*, which was filed April 11, 2023. As such, the trial court and the parties did not have the benefit of the decision.

8

and the defendant had taken advantage of a position of trust.  (*Thai*, *supra*, 90 Cal.App.5th at pp. 430-432.)  The appellate court reversed.  (*Id.* at p. 435.)

The *Thai* court concluded that the trial court had abused its discretion because the prosecution had failed to produce evidence establishing that "terminating the registration requirement considerably raised the threat to society because [the 64-year-old defendant] was *currently* likely to reoffend."  (*Thai*, *supra*, 90 Cal.App.5th at p. 433.)  Assuming that the underlying crime was egregious, "those facts alone do not demonstrate [the defendant] was a risk to the community over 24 years later."  (*Id.* at p. 434.)

At the hearing on defendant Juarez's section 290.5 petition, no dispute was raised as to the underlying facts:  that defendant repeatedly sexually abused and impregnated two different 13-year-old girls while he was in his 20's while also maintaining a relationship with the mother of one of the victims.  In all, he fathered five children with two teenage girls over a period of approximately five years.

We are mindful the circumstances here reflect acts of abuse beyond the single lewd act in *Thai*.  Nonetheless, when a trial court puts great weight on the nature and facts of an offense (often referred to as its egregiousness) *alone* to deny a section 290.5 petition, the court must articulate how a defendant's decades-old conduct is substantial evidence of *current* dangerousness such that requiring continued registration will significantly enhance community safety.  (*Thai*, *supra*, 90 Cal.App.5th at pp. 433-434.)  Here, the trial court considered the nature and facts concerning the registrable offense, the age of the victims, and defendant's criminal and relevant noncriminal conduct.  (§ 290.5, subd. (a)(3).)  However, given the absence of evidence presented by the People as to *current* dangerousness, the record does not support the court's decision to deny the petition.

The People did not present, in fact did not argue, any treatment or scientific evidence that the pattern of defendant's crimes requires current continued registration to significantly enhance community safety; this was information that might well be gleaned

9

from a report from a Sex Offender Management Board-certified sex offender treatment program discussing the person's current risk of sexual or violent reoffense, or risk levels on SARATSO static, dynamic, and violence risk assessment instruments.[4]

To the contrary, factors discussed and not in dispute included that defendant was not a stranger to the girls, he had completed more than the minimum years of required sex offender treatment classes through his grant of probation, and he had not reoffended since his conviction.

The only *current* information the trial court considered in denying the petition was the representation from the People that a victim opposed the petition. The trial court put great weight on the representation, finding the victim's opposition, as stated by the People, to be reliable. We observe, however, the manner in which the People presented the opinion of the victim lacked substantial evidence, as the reason for the victim's opposition is unknown. Defendant fathered children with both victims in this case and there was nothing presented to inform the court whether the victim's opposition was based on fear or something else.[5] While section 290.5 lists several factors the trial court *shall* consider, the opinion of a victim is not specifically listed. While a trial court can, and should, consider the opinion of the victim in such a proceeding, that opinion still needs to meet the statutory criteria of being ". . . reliable, material, and relevant." (§ 290.5(a)(3).)

We acknowledge the disturbing facts here of defendant's prolonged years of abuse; however, we find the evidence presented by the People at the hearing on the petition was insufficient to meet the requirements necessary for the trial court to order

---

[4] It was agreed, without explanation, that a Static-99 report was not available. (§ 290.5, subd. (a)(3).)

[5] We recognize the rights of victims to be heard under Marsy's Law and the Victims' Bill of Rights. (Cal. Const., art. I, § 28.)

continued registration.  Consistent with the legislation's purpose to cull from the registration rolls low-risk offenders so that resources could be concentrated on high-risk ones (Sen. Rules Com., Office of Sen. Floor Analyses, Sen. Bill No. 384 (2017-2018 Reg. Sess.) Sept. 15, 2017, pp. 7-8), it was incumbent upon the People to present "reasonable, credible, and solid evidence" establishing a current risk of reoffense.  (*Thai*, *supra*, 90 Cal.App.5th at pp. 433, 435.)  Without evidence establishing such risk, the trial court abused its discretion in determining that community safety would be " 'significantly enhanced' " by continued registration.  (*Id*. at p. 435.)  As such, the order of the trial court must be reversed.

## DISPOSITION

The order denying defendant's section 290.5 petition is reversed.


 /s/
Keithley, J.*


We concur:


 /s/
Hull, Acting P. J.


 /s/
Duarte, J.

---

*        Judge of the Butte County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

11