Filed 6/7/24  P. v. Belche CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | C097018 |
| v. | (Super. Ct. No. SMH0002798) |
| STEPHEN ROBERT BELCHE, | |
| Defendant and Appellant. | |

Defendant Stephen Robert Belche pleaded no contest to committing a lewd act on a child under 14 years of age.  The trial court placed him on probation, but subsequently sentenced him to state prison after repeated probation violations.  Later, when a jury found true allegations that defendant was a sexually violent predator under the Sexually Violent Predator Act (SVPA; Welf. & Inst. Code, § 6600 et seq.),[1] the trial court committed him indefinitely to the Department of State Hospitals (DSH).

Defendant appeals the commitment order, arguing (1) there is insufficient evidence he had a mental disorder preventing him from controlling sexually violent

_____

[1] Undesignated statutory references are to the Welfare and Institutions Code.

1

behavior, (2) there is insufficient evidence he was likely to engage in sexually violent predatory acts if released into the community, and (3) because insufficient evidence supports the commitment order, his indefinite confinement is an unconstitutional preventive detention.

We conclude sufficient evidence supports the commitment order and defendant has not established a constitutional violation. Accordingly, we will affirm the trial court's order.

APPLICABLE LAW

The SVPA "authorizes the involuntary commitment of certain convicted sex offenders -- termed 'sexually violent predators,' or SVPs -- who are found to have mental disorders that make them likely to reoffend after release from prison." (*Camacho v. Superior Court* (2023) 15 Cal.5th 354, 367 (*Camacho*).) The law was intended to address concerns regarding "a select group of criminal offenders who are extremely dangerous as the result of mental impairment, and who are likely to continue committing acts of sexual violence even after they have been punished for such crimes." (*Hubbart v. Superior Court* (1999) 19 Cal.4th 1138, 1143-1144 (*Hubbart*).)

The SVPA defines a "sexually violent predator" as: "[A] person who has been convicted of a sexually violent offense against one or more victims and who has a diagnosed mental disorder that makes the person a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior." (§ 6600, subd. (a)(1).) The state bears the burden of proving beyond a reasonable doubt that the person is a sexually violent predator. (§ 6604.)

To meet its burden, the state must prove the following four conditions exist: (1) the person has previously been convicted of at least one qualifying "sexually violent offense" listed in section 6600, subdivision (b); (2) the person has a diagnosed mental disorder that makes the person a danger to the health and safety of others; (3) the mental disorder makes it likely the person will engage in future acts of sexually violent criminal

2

behavior if released from custody; and (4) those acts will be predatory in nature. (*Camacho, supra*, 15 Cal.5th at p. 370; *Walker v. Superior Court* (2021) 12 Cal.5th 177, 190.)

For purposes of the SVPA, a "diagnosed mental disorder" means "a congenital or acquired condition affecting the emotional or volitional capacity that predisposes the person to the commission of criminal sexual acts in a degree constituting the person a menace to the health and safety of others." (§ 6600, subd. (c).) An act is "predatory" in nature if it is "directed toward a stranger, a person of casual acquaintance with whom no substantial relationship exists, or an individual with whom a relationship has been established or promoted for the primary purpose of victimization." (§ 6600, subd. (e).)

Under section 6600, subdivision (a), "a person is 'likely [to] engage in sexually violent criminal behavior' if at trial the person is found to present a substantial danger, that is, a serious and well-founded risk, of committing such crimes if released from custody." (*People v. Roberge* (2003) 29 Cal.4th 979, 988, italics omitted.) While the term "likely" in this context connotes more than the mere possibility that the person will reoffend, it does not require a determination that the chance of reoffense is better than even." (*Id.* at pp. 986-987, citing *People v. Superior Court (Ghilotti)* (2002) 27 Cal.4th 888, 922.)

A person is subject to commitment under the SVPA only if the person is found to have a current diagnosed mental disorder and to pose a current risk to public safety at the time of trial. (*Hubbart, supra*, 19 Cal.4th at p. 1162.) If the individual is found at trial to be a sexually violent predator, the trial court issues an indefinite order of commitment from which the individual can be released only if it is shown that he or she no longer qualifies as a sexually violent predator. (§§ 6604, 6604.1, subd. (a).)

The determination that a person qualifies as a sexually violent predator is subject to the substantial evidence standard of review on appeal. (*People v. McCloud* (2013) 213 Cal.App.4th 1076, 1088 [" 'In reviewing the evidence sufficient to support a

3

commitment under [the SVPA], "courts apply the same test as for reviewing the sufficiency of the evidence to support a criminal conviction" ' "]; *People v. Mercer* (1999) 70 Cal.App.4th 463, 465-466.) We review the entire record in the light most favorable to the judgment to determine whether evidence of ponderable legal significance, which is reasonable in nature, credible, and of solid value, supports the determination. (*McCloud*, at p. 1088.) We do not redetermine the credibility of expert witnesses or reweigh the relative strengths of their conclusions, and we draw all reasonable inferences and resolve all conflicts in favor of the judgment. (*People v. Sumahit* (2005) 128 Cal.App.4th 347, 352.)

BACKGROUND

In January 2017, defendant squeezed the buttocks of a 10-year-old girl as he walked by her in a store. At the time, he was on searchable probation. During a probation search of defendant's bedroom, officers found young girls' underwear and clothing, methamphetamine pipes, and a cell phone containing video footage of defendant filming unsuspecting females and hundreds of images of nude and partially undressed young females. In March 2017, defendant pleaded no contest to committing a lewd and lascivious act on a child under the age of 14. (Pen. Code, § 288, subd. (a) -- count 1.)

In April 2017, licensed psychologist Dr. Deborah Schmidt conducted a court-ordered evaluation of defendant under Penal Code section 288.1 to determine whether defendant was suitable for probation. Dr. Schmidt's report is not in the record, but the presentence probation report describes its contents. Dr. Schmidt diagnosed defendant with unspecified paraphilic disorder (a problem with sexual impulse control) based on his behavior observing unsuspecting persons, deriving sexual pleasure from touching an unsuspecting person, being attracted to minor children, and wearing young girls' underwear. She also diagnosed him as having adjustment disorder with anxiety, a polysubstance dependence disorder, and a mixed personality disorder characterized by

4

antisocial and narcissistic traits. Dr. Schmidt scored defendant as moderate/high risk on a Static-99R, an instrument used to assess risk for sexual offense recidivism. Defendant's results on a Million Clinical Multiaxial Inventory-III indicated significant elevations on narcissistic, antisocial, and aggressive/sadistic scales, suggesting he was likely to pose a risk to the health and safety of others. Dr. Schmidt believed defendant would be a challenging therapy client given his narcissistic and antisocial traits.

The trial court placed defendant on probation, but after defendant repeatedly violated the terms of his probation, the trial court terminated probation and sentenced defendant to three years in state prison.

Before defendant's scheduled release from prison in January 2021, DSH recommended that defendant be designated a sexually violent predator under the SVPA. That same month, the People petitioned the trial court to commit defendant to DSH indefinitely for treatment in a state hospital. The petition attached copies of DSH's recommendation as well as evaluations of defendant done by Dr. C. Mark Patterson, a clinical and forensic psychologist, and Dr. Alette Coble-Temple, a psychologist.

In Dr. Patterson's opinion, defendant met the criteria for a sexually violent predator. Using the Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition (DSM-5), Dr. Patterson diagnosed defendant with several mental disorders that may be associated with an increased likelihood of sexual offense recidivism and predisposed him to engage in sexually violent criminal behavior. The disorders included an unspecified paraphilic disorder encompassing pedophilic, voyeuristic, and exhibitionistic behaviors with a relatively high level of sexual preoccupation; an antisocial personality disorder; and multiple substance use disorders. According to Dr. Patterson, defendant's combined disorders predisposed him to the commission of sexual offenses to a degree that constituted a menace to the health and safety of others, adding that defendant's vulnerability to substance abuse and his high level of psychopathic personality traits likely contribute to this risk.

5

Dr. Patterson administered three actuarial instruments that measure sex offense recidivism rates: the Static-99R, the Static-2002R, and the Violence Risk Appraisal Guide-Revised. Defendant's scores on the Static-99R and the Static-2002R indicated a well-above average risk to reoffend, and his score on the Violence Risk Appraisal placed him in the moderately high risk level. Those with similar scores had a 58 percent risk of being charged with another violent offense, including a violent sexual offense, during the first five years after their release and a 78 percent risk of violent recidivism (including violent sexual recidivism) during the first 12 years after being released from custody.

In addition, Dr. Patterson determined defendant had a high range score for other risk factors, including sexual interest in children, sexualized violence, sexual preoccupation, lack of emotionally intimate relationships with adults, emotional congruence with children, callousness, grievance thinking, lifestyle impulsiveness, resistance to rules and supervision, and dysfunctional coping.

Dr. Coble-Temple also concluded that defendant met the criteria for being a sexually violent predator. She diagnosed defendant with an antisocial personality disorder and stimulant use disorders. Although defendant had "exhibited or endorsed a vast range of sexually deviant interests and behaviors including, but not limited to, voyeurism, pedophilia, frotteurism, indecent exposure, an unusually high sex drive, and a high degree of sexual preoccupation[,] as well as excessive use of pornography and excessive masturbation," Dr. Coble-Temple did not believe his conduct demonstrated a clear enough pattern of targeted sexual preference or interest to rise to the level of any specific paraphilic disorder. While she considered a diagnosis of pedophilic disorder given that he committed his sexual offense against an unknown 10-year-old girl and there was other evidence of a sexual interest in underage girls, she found that there was insufficient data to suggest he exhibited or endorsed any singular urges or attraction toward children. Dr. Coble-Temple instead found that defendant's behavior was primarily driven by his antisocial personality disorder and exacerbated by extensive

6

substance abuse. Dr. Coble-Temple found defendant demonstrated an elevated level of risk due to his antisocial and narcissistic personality traits, as well as his repeated expressed feelings of extreme entitlement about his interactions with other people. She opined that the combination of defendant's disorders predisposed him to committing criminal sexual acts.

Dr. Coble-Temple administered the Static-99R and the STABLE-2007, which assessed dynamic risk factors. Defendant's Static-99R score put him in the above average risk for another sexual offense, and his STABLE-2007 score placed him in the high risk category.

The trial court found probable cause to believe defendant was likely to engage in sexually violent predatory behavior upon his release from prison, and the matter proceeded to a jury trial.

The People offered the testimony of Placer County probation officer Michelle Hamilton. She said she found child-related items in defendant's bedroom during probation searches, that defendant tested positive for methamphetamine, and that he admitted using heroin. One day defendant did not answer his door for a probation search, and after forcing entry, officers found him hiding in the garage. In his room they discovered two magazines specific to young girls and a young girl's headband. Hamilton conceded that the child-related items did not give rise to new criminal charges and that defendant had not committed new sexual or violent offenses while on probation.

Probation officer Lucy Hart also testified for the People. She said defendant denied having a drug or alcohol addiction and he was not interested in a residential treatment program for drug use.

Dr. Schmidt testified for the People regarding her Penal Code section 288.1 evaluation of defendant. She had not interacted with defendant since preparing her report five years earlier. Dr. Schmidt acknowledged that the purpose of her evaluation had not

been to determine whether defendant was a sexually violent predator, and that she could not comment on his current status.

Dr. Patterson testified for the People that he had served as an expert forensic psychologist over 150 times and had conducted around one thousand sexually violent predator evaluations. He said that based on his initial examination and his reevaluation of defendant prior to trial, it was his opinion defendant was likely to reoffend in a sexually violent, predatory manner. Dr. Patterson found that defendant lacked empathy for his victims and was unremorseful for his criminal conduct. When Dr. Patterson asked if defendant had a plan to ensure he did not reoffend, defendant said he would go on living his life. Dr. Patterson said defendant's scores on the Static-99R, the Static-2002R, and the Violence Risk Assessment indicated a high risk of reoffense. Dr. Patterson opined that if defendant were to reoffend, it would likely be a predatory sexual offense. He also believed defendant's sexual preoccupation was high and that defendant exhibited dysfunctional coping skills, both of which increased his risk for reoffending.

In addition, Dr. Coble-Temple testified for the People. She said she had conducted around 100 sexually violent predator evaluations for DSH. Dr. Coble-Temple testified that based on her initial examination of defendant and her reevaluation of him prior to trial, it was her opinion defendant was likely to reoffend in a sexually violent, predatory manner. In her view, defendant's diagnosed mental disorders impaired his ability to control his predatory behaviors. In addition, his high static risk factors and dynamic risk factors, along with his continued acts of sexual deviance in a controlled environment, indicated he was likely to engage in future sexually violent acts. She said defendant had exhibited only a minimal level of insight into his behavior.

Defendant's father testified for the defense, explaining that if defendant were released on parole he could live with the father and mother and the father was willing to provide defendant with financial support and help him comply with parole conditions.

Dr. Alan Abrams also testified on defendant's behalf as an expert in forensic psychiatry. He said that over the course of his 50-year career he had conducted approximately 60 to 70 full evaluations and 20 to 30 record reviews under the SVPA. Dr. Abrams diagnosed defendant with cannabis, opioid, and alcohol use disorders, which were all mild in a controlled environment, as well as methamphetamine stimulant use disorder, which was moderate in a controlled environment. He did not diagnose defendant with any paraphilic disorders and he did not believe defendant had an antisocial personality disorder. Dr. Abrams opined that most of defendant's legal problems stemmed from his failing to achieve sobriety. Dr. Abrams acknowledged there was a risk that if defendant did not receive proper treatment for his substance use disorder that he may be unable to control his impulses when intoxicated. Dr. Abrams did not believe defendant's mental disorders predisposed him to commit sexual acts, but he conceded there was a possibility that defendant's potential future behavior while intoxicated might involve criminal sexual offenses even if the probability of such offenses, in his opinion, was low. He found defendant was amenable to drug treatment, which he believed should be conducted in the community.

The jury found true allegations that defendant was a sexually violent predator under the SVPA. The trial court declared defendant a sexually violent predator and committed him to DSH.

DISCUSSION

I

Defendant contends there is insufficient evidence he had a mental disorder preventing him from controlling sexually violent behavior. He concedes he was convicted of a qualifying offense (Pen. Code, § 288; see §§ 6600, 6600.1) and that he was diagnosed with various mental disorders. But he challenges some of the diagnoses from the People's experts and contends the existence of mental disorders alone was not enough to show he could not control sexually violent behavior.

9

Acknowledging that disagreement between experts does not necessarily amount to insufficient evidence, defendant nevertheless claims it was unreasonable for the jury to credit the prosecution experts. We see no basis on this record to conclude the jury finding was unreasonable; accordingly, we decline to interfere with the jury's role as finder of fact. The jury was properly instructed that if the experts disagreed with one another, the jury was to weigh each opinion against the others, examine the reasons given for each opinion and the facts on which each expert relied, compare their qualifications, and disregard any opinion that it found unbelievable, unreasonable, or unsupported by the evidence.

Defendant argues his substance use disorder could not reasonably impair his ability to control sexually violent behavior. Although that was a disorder on which the experts appeared to agree, it was not the only disorder evidence upon which the jury could base its finding. For example, Dr. Coble-Temple opined that each of the disorders she diagnosed impaired defendant's volitional control of sexually violent predatory behavior.

In addition, defendant asserts that the unspecified paraphilic disorder diagnosed by Dr. Patterson and Dr. Schmidt did not establish that defendant lacked control at the time of trial. But Dr. Schmidt testified that a paraphilic disorder does not resolve on its own, and the record indicates defendant never completed sex offender treatment. The jury had sufficient evidence to support its finding. A finding of danger to others does not require proof of a recent offense while in custody. (§ 6600, subd. (d); CALCRIM No. 3454.)

Considering the totality of the evidence, sufficient evidence supports the challenged finding.


II

Defendant next contends there is insufficient evidence he was likely to engage in sexually violent predatory acts if released into the community.

10

To assess defendant's likelihood of reoffense, the evaluating experts administered various risk assessment tools and also considered increased risk factors. According to Dr. Coble-Temple, the ability of the Static-99R to assess relative risk has been fairly consistent across a wide variety of samples, countries, and settings, and it is accepted by the scientific community, courts, and applied evaluators. (See, e.g., Cal. Code Regs., tit. 15, § 2240, subd. (a) [the Static-99R is "commonly used by mental health professionals who assess risk of violence of incarcerated individuals"].) Both Dr. Schmidt and Dr. Abrams scored defendant as a four on the Static-99R, indicating a moderate/high risk for reoffending. Dr. Coble-Temple gave defendant a score of five, indicating an above average risk for reoffending, while Dr. Patterson gave defendant a score of six, which fell into the well above average category and represented the highest relative risk of reoffending. Defendant also received high risk scores on the other actuarial devices Dr. Patterson administered, the Static-2002R and the Violence Risk Appraisal, which were consistent with defendant's elevated Static-99R score. Dr. Coble-Temple found that in addition to defendant's high static factors, he scored high in dynamic risk factors, including a high sexual preoccupation and an array of sexually deviant behavior, which he continued to engage in while incarcerated.

Defendant claims Dr. Patterson and Dr. Coble-Temple ignored or distorted facts to artificially inflate defendant's risk scores. He complains that neither Dr. Patterson nor Dr. Coble-Temple should have given him a point for having a prior sexual offense because they should not have characterized the index offense (the most recent offense) as defendant's dismissed 2018 indecent exposure charge. Given the dismissal, he contends that they should have selected defendant's 2017 lewd conduct conviction as the index offense, as Dr. Abrams did, which would have lessened his risk assessment score by a point. It is true that Dr. Abrams questioned the validity of using the dismissed indecent exposure charge as the index offense, but he conceded on cross-examination that the

11

standard practice, according to the Static-99R scoring guide, was to include arrests even if no charges were filed or the incident resulted in acquittal.

According to defendant, Dr. Patterson further manipulated his Static-99R score by failing to credit him with having a mitigating romantic relationship of over two years despite defendant self-reporting that he had lived with a woman for approximately three years. As Dr. Patterson explained, however, defendant had earlier reported that his cohabitation was "off and on" over that period of time rather than continuous. Other evidence in the record reasonably supports Dr. Patterson's rationale for not crediting defendant with an uninterrupted romantic living arrangement. Defendant's father testified that defendant had lived with his parents for most of his adult life and had only moved out and lived with a friend for about a year and a half before returning to his parents' house.

Defendant further faults Dr. Patterson for not finding the existence of any protective factors to lessen the risk of reoffense, such as that defendant performed successfully in the community. The contention is based on the probation officer testimony that defendant had not been charged with a new sexual offense while she supervised him on probation. But Dr. Patterson explained that the protective factor was only present if defendant had "been in the community without sexually reoffending for at least two years," and defendant spent less than two years on probation before he was sentenced to prison. Dr. Coble-Temple also found that the protective factor did not apply.

The jury could reasonably rely on the expert opinions of Dr. Patterson and Dr. Coble-Temple that defendant was likely to engage in sexually violent predatory criminal behavior if released into the community. The jury's acceptance of the People's evidence over the defense evidence does not establish an improper bias against defendant for wearing female clothing, masturbating, or viewing pornography. The trial court instructed the jurors with CALCRIM No. 200 that they must not let bias, prejudice, or public opinion influence their assessment of the evidence or their decision. We presume

12

the jury followed the trial court's instructions and there is no evidence the jury allowed bias to infect its decision-making. (*People v. Ramirez* (2021) 10 Cal.5th 983, 1017-1018 [applying presumption that jury followed instructions to ignore bias].)

Sufficient evidence supports the challenged finding.

## III

Defendant further argues that because insufficient evidence supports the commitment order, his indefinite confinement is an unconstitutional preventive detention. We have concluded that sufficient evidence supports the commitment order. There is a reasonable relationship between the jury's finding and the commitment order, and defendant has not established a constitutional violation. His contention lacks merit.

## DISPOSITION

The order declaring defendant to be a sexually violent predator and committing him to DSH for appropriate treatment and confinement in a secure facility for an indeterminate term is affirmed.

/S/
MAURO, Acting P. J.

We concur:

/S/
DUARTE, J.

/S/
FEINBERG, J.

13